Gina DRAGSETH, Appellant,

v.

Joseph DRAGSETH, Appellee.

No. S–13168.

Supreme Court of Alaska.

July 10, 2009.

---

Allan Beiswenger, Law Office of Allan Beiswenger, Anchorage, for Appellant.

Steven Pradell, Steven Pradell & Associates, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Following divorce proceedings, Gina Dragseth appeals the trial court's award of child custody, determination that certain promissory notes were Joseph Dragseth's separate property, and decision allowing Joseph to pay a portion of an attorney's fees award with certain property rather than cash. Because the custody decision does not adequately reflect that the court considered relevant statutory factors and the best interests of the children, we vacate the physical and

legal custody awards and remand for further proceedings. Because the promissory notes were not presented or analyzed under the correct legal framework, we vacate the determination that the notes were Joseph's separate property and remand for further proceedings. In light of these rulings, we vacate the order for attorney's fees and remand for renewed consideration at the conclusion of the proceedings.

## II. FACTS AND PROCEEDINGS

Gina and Joseph Dragseth married in March 1993. They have two minor children: a son born in May 1995 and a daughter born in June 1997.

Joseph attended junior college and has vocational certificates and experience as an oilfield operator. He is employed on the North Slope and typically has a three-weeks-on/three-weeks-off schedule, meaning he is unavailable for three-week periods while he is working. He generally is allowed to take summers off for commercial fishing. Gina has a high school diploma and a pharmacy technician degree, and before the marriage was employed as a head pharmacy technician. However Gina was the children's primary caregiver and was not employed outside the home for roughly the last ten years of the marriage.

Relevant to this appeal are two income-producing promissory notes in favor of Taku Marine. Taku Marine was originally established as a fifty-fifty partnership between Joseph and his parents. Joseph purchased his parents' partnership interest in 1998, after which Joseph continued to operate Taku Marine as a sole proprietorship. Also relevant to this appeal is a marine engine (with an agreed value of $5,000) included in the parties' lists of marital assets.

Gina filed for divorce in August 2007. After an evidentiary hearing an interim order for child custody and visitation, child and spousal support, and attorney's fees was entered in December 2007. Trial took place in early May 2008, and the trial court issued its findings of fact and conclusions of law on May 13, 2008. Gina filed a motion for reconsideration, but it was denied under Civil Rule 77(k)(4) when the trial court did not rule on it.

Gina appeals.

## III. STANDARD OF REVIEW

The trial court "has broad discretion in determining child custody,"[1] and we will not set aside a child custody determination unless the lower court's factual findings are clearly erroneous or unless the lower court abused its discretion.[2] "A court abuses its discretion if it issues a custody decision without considering all statutorily mandated factors that are relevant to the case at hand."[3] The court's findings should give us "a clear indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[4] We will set aside the court's factual findings as clearly erroneous only if review of the entire record "leaves us 'with a definite and firm conviction ... that a mistake has been made.'"[5]

The equitable allocation of marital property is reviewed for abuse of discretion, as is the characterization of property as marital or separate.[6] Whether the trial court applied the correct legal rules in the process of classifying property is reviewed de novo.[7]

## IV. DISCUSSION

### A. Child Custody

Under AS 25.24.150(c) the trial court shall award custody in the best interests of

**1.** *Blanton v. Yourkowski*, 180 P.3d 948, 951 (Alaska 2008) (citing *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)).

**2.** *Id.*

**3.** *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999).

**4.** *Smith v. Weekley*, 73 P.3d 1219, 1226 (Alaska 2003) (quoting *Borchgrevink*, 941 P.2d at 139–40) (internal quotation marks omitted).

**5.** *Id.* at 1222 (quoting *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997)).

**6.** *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006); *Leis v. Hustad*, 22 P.3d 885, 887 (Alaska 2001).

**7.** *Leis*, 22 P.3d at 887 (citing *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994)).

the child. In determining the child's best interests, it shall consider nine factors:

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . .;

(7) any evidence of domestic violence, child abuse, or child neglect . . . or a history of violence between the parents;

(8) evidence [of] substance abuse . . . directly affect[ing] the child; [and]

(9) other factors that the court considers pertinent.[8]

Gina claimed at trial that Joseph's discipline techniques amounted to a "history of domestic violence." She requested sole legal custody of the children and asked that Joseph be allowed only supervised physical custody until he received evaluation and treatment. The trial court rejected Gina's request, calling her accusations "frivolous and without merit" and concluding that Gina likely "raised her claims against [Joseph] to influence the [custody] investigator and the court" regarding custody and child support.

The custody investigator found "no reportable child abuse," but recommended awarding Gina sole legal and primary physi-cal custody. The trial court rejected that recommendation.[9]

The trial court awarded joint legal custody, finding that Joseph and Gina were able to have constructive discussions about major parental decisions[10] and finding that there was no other evidence joint legal custody would be inappropriate. The trial court also awarded joint physical custody and continued the interim visitation framework that accommodated both Joseph's work schedule and Gina's ability to have overnights with the children during the weeks Joseph did not work.

Gina argues with respect to the award of joint legal custody that the trial court erroneously found the parties could reach agreement on major parental decisions. Gina does not offer any specific evidence that she and Joseph differ on major issues such as the children's social or religious upbringing. Gina instead points to reluctant compromises she and Joseph have made regarding child custody during the separation.

This court will not disturb the trial court's factual findings unless review of the entire record "leaves us 'with a definite and firm conviction . . . that a mistake has been made.'"[11] Our review of the record reveals sufficient grounds for the trial court's determination that Gina and Joseph are able to communicate effectively when necessary. Although the custody investigator testified that there had been a breakdown in their ability to communicate, Gina admitted that she and Joseph had been able to agree on a visitation schedule that was simpler than the one provided by the trial court's interim order. Joseph agreed that he and Gina had essentially devised their own custody schedule and had traded days of custody without

---

**8.** AS 25.24.150(c)(1)-(9). If there is a finding of domestic violence, the court must consider AS 25.24.150(g), which creates a rebuttable presumption that sole or joint legal or physical custody should not be awarded to a parent with "a history of perpetrating domestic violence." *Puddicombe v. Dreka,* 167 P.3d 73, 77 (Alaska 2007).

**9.** The trial court is not obligated to adopt a custody investigator's recommendations. *See, e.g., Chase v. Chase,* 109 P.3d 942, 945–46 (Alaska 2005) (noting that "a custody investigator's report is just one of many pieces of evidence" available for the trial court's resolution of child custody disputes).

**10.** *See Bird v. Starkey,* 914 P.2d 1246, 1250 n. 6 (Alaska 1996) ("Joint legal custody is predicated upon the parents' ability to reach ultimate agreement on the important decisions involved in child rearing.").

**11.** *Smith v. Weekley,* 73 P.3d 1219, 1222 (Alaska 2003) (quoting *Duffus v. Duffus,* 932 P.2d 777, 779 (Alaska 1997)).

problems. He also testified that he and Gina were "able to work things out" regarding day-to-day affairs. The trial court found "no evidence" that Gina and Joseph would have difficulty agreeing on decisions about schooling, religious practice, or extracurricular activities. We are not left with the impression that the trial court was mistaken in finding that the parties are able to communicate effectively enough to share legal custody. We therefore conclude that this finding is not clearly erroneous.

■ Gina also argues that the trial court did not make any explicit findings regarding the children's best interests for its legal and physical custody determinations. The custody investigator's assessment methodically addressed the statutory factors underlying the best-interests analysis. The custody investigator noted that Joseph relies on his parents to perform many day-to-day tasks, such as cooking and cleaning, making it difficult to assess his ability to maintain a household if he moves out of his parents' house. She noted that both children expressed a preference for spending most of their time with their mother. She also noted that both children voiced dissatisfaction with the interim custody arrangement—which was adopted without alteration by the trial court as the final custody arrangement—apparently finding it disruptive. As the custody investigator put it, "[t]he current schedule, while on paper seems equitable to the adults, has dramatically changed the children's lives and it is something that neither of them [is] liking or wanting to have continue."

■ "The trial court is under no obligation to make specific findings regarding [a custody investigator's] report as long as the court considers the appropriate statutory factors when making custody determinations."[12] But the trial court's eighteen-page decision does not contain the phrase "the best interests of the children," and the trial court failed to address, explicitly or implicitly, the

relevant statutory factors—including the children's custody preference, the relative bonds between the children and each parent, and the children's need for stability.[13] Even after Gina pointed out this deficiency in her motion for reconsideration, the trial court failed to present best interests findings in support of the custody award. The trial court's decision does not give us the required "clear indication of the factors which the . . . court considered important in exercising its discretion."[14]

Joseph argues that the trial court's best interests findings in the December 2007 interim custody and visitation order are sufficient to support the trial court's custody award after trial. After an evidentiary hearing on December 19, 2007, the trial court noted in its order only that it found "both of the parties are fit parents and that [it] is in the best interests of the children to have substantial quality time with each parent." Joseph argues this finding implicitly reflects that the trial court considered AS 25.24.150(c)(1)-(2) (needs of the children and capability and desire of parents to meet children's needs), AS 25.24.150(c)(4) (stability and continuity), and AS 25.24.150(c)(6) (parents' willingness to facilitate and encourage relationships between the children and the other parent).

We disagree with Joseph. He reads much into a single conclusory statement in an interim order entered after an abbreviated evidentiary hearing, and we note that the trial court did not incorporate its interim order into the final findings and conclusions. The brief mention of the children's best interests in the December 2007 interim order cannot be considered an acceptable substitute for appropriate findings on the statutory best-interests factors after the full trial on the merits of the custody dispute.

■ Generally the remedy for failing to consider statutory custody factors is a re-

---

12. *Chase,* 109 P.3d at 946.

13. The trial court did implicitly address AS 25.24.150(c)(7), the factor concerning domestic violence, when it rejected Gina's characterization of Joseph's disciplinary techniques as domestic violence.

14. *Smith,* 73 P.3d at 1226 (quoting *Borchgrevink v. Borchgrevink,* 941 P.2d 132, 139–40 (Alaska 1997)) (internal quotation marks omitted).

mand to the trial court for specific findings on relevant factors.[15] Gina asserts she should be awarded legal and physical custody as a matter of law. Although Gina argues that the facts relevant to the children's best interests are not in dispute, we disagree with this characterization of the evidence and decline Gina's invitation to make a custody determination as a matter of law.

We vacate the legal and physical custody awards and remand for specific findings on the best-interests factors set out in AS 25.24.150(c). Because new findings will be made on remand, the parties should be allowed to present the trial court with updated factual evidence bearing on these factors.

## B. Taku Marine Promissory Notes

When dividing the parties' marital assets the court considered the factors specified in AS 25.24.160 to determine a fair and equitable division.[16] Because of Joseph's higher earning capacity and other differences in financial status between Joseph and Gina, the court found that a fifty-five/forty-five division of the marital assets in Gina's favor would be fair and equitable. Neither party appeals this determination.

▮ The character of the Taku Marine promissory notes was disputed at trial: Gina claimed they were marital property and Joseph claimed they were his separate property. The trial court found that Taku Marine had been a fifty-fifty partnership between Joe and his parents, that Joe had purchased his parents' interest and continued to operate the business as a sole proprietor, and that the two promissory notes arose not from loans of marital funds, but from Taku Marine business operations. The trial court found that Joe passed fifty percent of the note payments to his parents under an oral agreement with them, and that the note proceeds that Joe kept and placed in joint accounts became marital property. The court concluded that the notes themselves were Joe's separate property.

This analysis was misplaced. Instead of focusing narrowly on the notes, the parties and the trial court should have been looking at Taku Marine itself and whether Joseph's interest in the business was marital or separate.[17] This gives rise to certain observations.

First, Joseph was a partner in Taku Marine beginning in 1980 and continuing after the 1993 marriage until the purchase of his parents' interest in Taku Marine in 1998. Assuming Joseph's partnership interest in Taku Marine remained separate property from 1993 through 1998, any demonstrated increase in the value of that interest from the date of the marriage until the purchase of his parents' interest would be marital property.[18] Assuming Joseph thereafter maintained Taku Marine as separate property, any demonstrated increase in the value of the business from the purchase of his parents' interest until the parties separated also would be marital property.[19] The burden of persua-

---

15. *See id.* at 1227.

16. AS 25.24.160(a)(4) specifies that "the division of property must fairly allocate the economic effect of divorce," based on consideration of several factors including the length of the marriage as well as the parties' ages, health, earning capacities, financial condition, and needs.

17. *See, e.g.,* 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:71 (3d ed. 2005) ("There is broad general agreement that a business ... as an entity constitutes *property*. It is therefore marital property to the extent that it was acquired during the marriage."). (Emphasis in original.)

18. *See, e.g., Hanson v. Hanson,* 125 P.3d 299, 304–06 (Alaska 2005) (holding increase in value

of husband's ongoing business which was attributable to his marital efforts was marital property); *Schmitz v. Schmitz,* 88 P.3d 1116, 1125 (Alaska 2004) (noting that " 'time and energy of both spouses during the marriage is to be considered in dividing marital property' " and holding that neither spouse should "be able to erase his or her contributions of time and energy from the marital estate 'by rolling them back into a business which he began before the marriage.' ") (quoting *Lowdermilk v. Lowdermilk,* 825 P.2d 874, 877–78 (Alaska 1992)); *Abood v. Abood,* 119 P.3d 980, 989–90 (Alaska 2005) (holding that time the husband spent working for a business he ran as a sole proprietorship was a marital contribution to the property).

19. *Hanson,* 125 P.3d at 304–06; *Schmitz,* 88 P.3d at 1125; *Abood,* 119 P.3d at 989–90.

sion on such increases in value rests on Gina.[20]

 Second, property obtained during marriage is marital unless it can be traced to a source considered separate property.[21] "The party seeking to establish that the property is separate always bears that burden of proof; thus untraceable assets are marital property."[22] Joseph acquired his parents' interest in Taku Marine during the marriage, and unless Joseph can provide persuasive evidence that the funds for the acquisition came from a separate property source, the fifty-percent interest in Taku Marine acquired in 1998 would be marital property.

 Third, evidence and arguments relied upon by Joseph suggest that even if Taku Marine had been his separate property in whole or in part after 1998, the entire business may have been transmuted into marital property. "[A] spouse's premarital separate property can become marital through transmutation.... Transmutation occurs when a married couple demonstrates an intent, by virtue of their words and actions during marriage, to treat one spouse's separate property as marital property."[23] Despite claiming to have purchased his parents' interest in Taku Marine and operating it as a sole proprietorship, Joe claims that he had an agreement with his parents that they still were to receive fifty percent of the note proceeds.[24] He also claims the Taku Marine payments to his parents were "gifts," that Gina knew the Taku Marine payments to his parents were gifts, and that Gina, "a signer on the Taku account," wrote checks for some of the gifts because annual gift limits under federal tax law precluded him from giving enough to his parents "to get their half." But Gina could only make personal gifts of Taku Marine business assets if those assets were hers, and so the Taku Marine business may have been treated as—and thus may

have become—jointly owned marital property.

Because neither the parties nor the trial court addressed Taku Marine itself, the present record is insufficient for a determination of whether Taku Marine was separate or marital property. We therefore vacate the trial court's determination that the notes were Joseph's separate property and remand for further property division proceedings, and specific findings and conclusions, regarding the Taku Marine business.

### C. Attorney's Fees

The December 2007 interim order required Joseph to pay Gina $5,000 for attorney's fees. In light of that award and the division of marital assets in Gina's favor, the trial court awarded Gina an additional $2,000 in attorney's fees after trial. The trial court offered Joseph the option of delivering a marine engine valued by both Gina and Joseph at $5,000 to a place of Gina's choosing in lieu of paying cash.

 Gina argues that giving Joseph the option to pay Gina with a boat engine instead of cash was "gratuitous," "inappropriate," and "an intended sanction of Gina that was unwarranted, and constitutes an abuse of discretion." Gina contends the trial court was trying to punish her for her claims of domestic violence, but Joseph points out that the trial court had no obligation to award Gina additional attorney's fees in the first place.

 The purpose of awarding attorney's fees in divorce proceedings is to level the playing field, which means taking into account not only earning capacities and separate resources, but also the distribution of marital assets itself.[25] We have noted "that a party who receives a property settlement sufficient to cover ... attorney's fees should"

---

20. *Hanson,* 125 P.3d at 304.

21. *Schmitz,* 88 P.3d at 1128.

22. *Id.* at 1128 (internal citation omitted).

23. *Id.* at 1125 (citing *inter alia, Harrower v. Harrower,* 71 P.3d 854, 857 (Alaska 2003)).

24. Joe also inconsistently claims that his agreement with his parents is that they still own half of Taku Marine and always will.

25. *See, e.g., Tybus v. Holland,* 989 P.2d 1281, 1289 (Alaska 1999); *Money v. Money,* 852 P.2d 1158, 1165 (Alaska 1993); *Siggelkow v. Siggelkow,* 643 P.2d 985, 989 (Alaska 1982).

not expect an attorney's fee award.[26] By reversing the trial court's characterization of the Taku Marine promissory notes as Joseph's separate property, we increase the value of the marital estate and the assets that will be distributed to Gina. On remand the award of attorney's fees should therefore be reconsidered.

The trial court did not explain why it chose the boat engine as a cash substitute for part of the attorney's fee award. Absent a dispute about the ability of one party to convert the property into cash, we see no problem per se in awarding property as a substitute for the cash value of an attorney's fee award. But when one party raises concerns about the ability to convert that property to cash, as Gina has here, the trial court should make findings to justify that aspect of its award. If on remand the trial court reinstates the specifics of its award, it should address Gina's arguments and explain its reasons for allowing Joseph to pay attorney's fees with the boat engine.

## V. CONCLUSION

We AFFIRM the trial court's factual finding that the parties are able to communicate sufficiently for joint legal custody, but we VACATE the trial court's child custody decision and REMAND for specific findings and conclusions on the best-interests factors of AS 25.24.150(c).

We VACATE the trial court's determination that the Taku Marine promissory notes are separate property and REMAND for further property division proceedings regarding the Taku Marine business.

We VACATE and REMAND the issue of attorney's fees for renewed consideration at the conclusion of the proceedings.

MATTHEWS, Justice, not participating.