Elkam BARLOW, Appellant,

v.

Tracy THOMPSON, Appellee.

No. S–13206.

Supreme Court of Alaska.

Dec. 18, 2009.

Elkam Barlow, pro se, Anchorage.

No brief filed by Appellee.

Before: CARPENETI, Chief Justice, EASTAUGH, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Elkam Barlow appeals a custody determination granting Tracy Thompson sole legal and primary physical custody of their daughter. Barlow argues that the superior court did not have jurisdiction to hear the case; that the judge impermissibly acted as "lay counsel" for the mother; that the court was biased against him; and that the court disregarded Thompson's alleged interference with Barlow's visitation. We affirm as to each of these arguments.

Barlow also argues that the court erred in calculating the amount of child support he owed. Because the record does not contain the findings necessary to support an imputation of income to Barlow, we remand this issue for further proceedings.

## II. FACTS AND PROCEEDINGS

A daughter was born in October 1996 to Tracy Thompson and Elkam Barlow. Thompson and Barlow never married but lived together for a short time after their daughter was born. When their daughter was two-and-a-half years old, Thompson unilaterally moved out of state with her, returning to Alaska when the child was approximately five years old. At some point, Thompson married Joshua Thompson, her current husband.

In July 2007 Thompson filed a complaint for custody of the child. When Barlow filed his answer, he marked on the answer form that he "disagree[d] that the court has jurisdiction to decide custody."

In December 2007 Barlow filed a motion to dismiss for lack of jurisdiction. Superior Court Judge Stephanie E. Joannides denied the motion, citing AS 25.30.300 as the basis for jurisdiction. Barlow continued to challenge the court's jurisdiction, both at a February 2008 hearing and through various written filings.

Barlow also filed a "Notice of Dismissal for Bias," asking that the judge be removed from the case. The judge denied this motion, and Superior Court Judge Patrick J. McKay later affirmed the denial. Pending Judge McKay's decision on the recusal issue, the case was referred to Superior Court Master Jonathon Lack.

The master conducted a custody, visitation, and support hearing attended by both parties pro se. The master recommended that

Thompson have sole legal custody and primary physical custody of their daughter, and that Barlow pay $452 per month in child support. The master also proposed a visitation schedule, recommending that the court not implement part of the schedule until Barlow had completed an anger management assessment and a co-parenting course at his expense. Judge Joannides approved the master's report and signed the final child support order.

Barlow appeals. He argues that: (1) the superior court did not have jurisdiction to hear the case; (2) the court erred in calculating the amount of child support owed; (3) the judge impermissibly acted as "lay counsel" for Thompson; (4) the judge and the master were biased against him; and (5) Thompson repeatedly disregarded the court's orders and interfered with Barlow's visitation with their daughter.

## III. DISCUSSION

### A. Standard of Review

■ Whether a superior court has jurisdiction is a question of law that we review de novo.[1]

■ A superior court has broad discretion in determining child custody, and we will not set aside a child custody determination unless the superior court has abused its discretion or its relevant factual findings are clearly erroneous.[2] We will set aside the court's factual findings as clearly erroneous only if review of the entire record leaves us with a definite and firm conviction that a mistake has been made.[3] We review for abuse of discretion a superior court's evidentiary rulings.[4] We also review for abuse of discretion the weight given by the superior court to the factors in AS 25.24.150(c) for determining the best interest of a child.[5]

■ A superior court's factual findings regarding a party's income when awarding child support are reviewed for clear error.[6] A court's factual findings imputing income to a child support obligor are reviewed for clear error.[7] We will vacate a child support award based on imputed income and remand for further proceedings if there are insufficient findings for us to determine whether it was error to impute income.[8]

### B. Whether the Superior Court Had Jurisdiction

■ Barlow argues that the superior court did not have jurisdiction to hear this case. He argues that because he indicated on his response to Thompson's complaint that he "disagree[d] that the court has jurisdiction to decide custody," subject matter jurisdiction was not "granted to the court by both parties." He cites Alaska Civil Rule 12(h)(3), which states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter the court shall dismiss the action." He also argues that the superior court denied him procedural due process by not dismissing the case.

1. *Atkins v. Vigil*, 59 P.3d 255, 256 (Alaska 2002).

2. *Dragseth v. Dragseth*, 210 P.3d 1206, 1207 (Alaska 2009).

3. *Id.*

4. *In re D.J.A.*, 793 P.2d 1033, 1036 n. 2 (Alaska 1990).

5. *Puddicombe v. Dreka*, 167 P.3d 73, 75 (Alaska 2007) ("In child custody cases, we will find the superior court abused its discretion if it 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.'") (quoting *Silvan v. Alcina*, 105 P.3d 117, 120 (Alaska 2005)).

6. *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (citing *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001)).

7. *Sawicki v. Haxby*, 186 P.3d 546, 550 (Alaska 2008) (citing *Dunn v. Dunn*, 952 P.2d 268, 270 (Alaska 1998)).

8. *O'Connell v. Christenson*, 75 P.3d 1037, 1041 (Alaska 2003) ("The absence of specific findings that justify imputing … income … renders it impossible for this court to determine whether the [lower] court was clearly erroneous in its imputation decision. For this reason, we vacate the child support award and remand the question of imputed income."); *see also Nass v. Seaton*, 904 P.2d 412, 418–19 (Alaska 1995).

Barlow's jurisdictional arguments are without merit. To exercise jurisdiction over a case, a court must have subject matter jurisdiction over the claims asserted[9] and personal jurisdiction over the parties.[10] Alaska Statute 22.10.020 grants the superior court general subject matter jurisdiction over these kinds of cases.[11] And the Uniform Child Custody Jurisdiction and Enforcement Act grants the superior court subject matter jurisdiction to hear certain child custody disputes.[12] As Judge Joannides noted in her order denying Barlow's motion to dismiss for lack of jurisdiction, the custody dispute over the parties' child is such a dispute. Alaska Statute 25.30.300 provides in relevant part: "[A] court of this state has jurisdiction to make an initial child custody determination only if . . . this state is the home state of the child on the date of the commencement of the proceeding." The record shows that the child lived in Alaska when Thompson filed her complaint for custody and that the child had lived in Alaska for approximately six years before the filing date. Barlow does not contest these facts. The superior court therefore had subject matter jurisdiction over the dispute.

The superior court also had personal jurisdiction over Barlow. Although consent of the party is one of the traditional grounds for personal jurisdiction,[13] a defendant's consent is not usually necessary for personal jurisdiction to lie.[14] Under AS 09.05.015(a)(1)(A), for example, Alaska courts have personal jurisdiction over any defendant who is "a natural person present in [Alaska] when served." Because Barlow was served in Alaska, he could not deprive the superior court of personal jurisdiction over him by withholding his consent.

It may be that Barlow believes that the text of Civil Rule 12(h)(3) entitled him to a dismissal merely because he raised a "suggestion" that the court lacked jurisdiction. If so, he misreads the rule. The rule provides that a party may raise a question about jurisdiction. If there is no jurisdiction, the court must dismiss the action. But if the court determines there is jurisdiction, it must reject the party's "suggestion." In effect, the rule simply establishes that the court must consider the party's "suggestion" and must dismiss if the suggestion is meritorious. The rule does not state or imply that the court must dismiss if the suggestion, as here, is without merit.

The superior court correctly ruled that it had jurisdiction regardless of Barlow's attempts to deny jurisdiction to the court.

### C. Whether the Superior Court's Child Support Calculations Were Erroneous

The master's report states that Barlow "is in arrears in excess of $25,000 in child support" and the final child support order

9. *Nw. Med. Imaging, Inc. v. State, Dep't of Revenue,* 151 P.3d 434, 438 (Alaska 2006) ("Subject matter jurisdiction is a prerequisite to a court's ability to decide a case. . . .").

10. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (discussing federal constitutional constraints on courts' ability to "subject a defendant to a judgment in personam").

11. AS 22.10.020(a) provides in relevant part that "[t]he superior court is the trial court of general jurisdiction, with original jurisdiction in all civil and criminal matters, including probate and guardianship of minors and incompetents."

12. AS 25.30.300–.910.

13. *See Int'l Shoe,* 326 U.S. at 318, 66 S.Ct. 154.

14. Alaska's "long-arm" statute, AS 09.05.015, grants Alaska courts personal jurisdiction over parties in " 'any case . . . in which the exercise of jurisdiction is permissible under the Fourteenth Amendment.' " *Polar Supply Co. v. Steelmaster Indus., Inc.,* 127 P.3d 52, 55 (Alaska 2005) (quoting *Cramer v. Wade,* 985 P.2d 467, 471 (Alaska 1999)). AS 09.05.015 provides in part:

(a) A court of this state having jurisdiction over the subject matter has jurisdiction over a person served in an action according to the rules of civil procedure

(1) in an action, whether arising in or out of this state, against a defendant who, when the action is commenced,

(A) is a natural person present in this state when served;

(B) is a natural person domiciled in this state;

(C) is a domestic corporation; or

(D) is engaged in substantial and not isolated activities in this state, whether the activities are wholly interstate, intrastate, or otherwise. . . .

requires Barlow to pay $452 per month. Barlow objects to both of these amounts because they are based on calculations by the Alaska Child Support Services Division (CSSD), which, he argues, incorrectly listed Thompson as the custodial guardian even though custody had not at that point been determined by a court. He also argues that the court erroneously calculated his monthly support obligation because the court based its figure on Barlow having full-time employment that paid fifteen dollars per hour, and "it can easily be determined that [his] wage has not been high enough to substantiate such an outrageous monthly obligation."

█ Any error in the arrearages calculation is harmless. The issue of arrearages was not before the superior court and there is no indication the amount of unpaid child support affected the court's child support or custody determinations. The arrearages calculation affected the master's recommendation that Thompson be allowed to collect their daughter's permanent fund dividend, but Barlow does not appeal this aspect of the support order.

Nonetheless, requiring Barlow to pay $452 per month in child support was reversible error. It appears this figure was largely based on an imputation to Barlow of annual income in 2008 of $31,200, calculated at fifteen dollars per hour, for forty hours of work per week, for fifty-two weeks a year. But Barlow testified only that he had earned fifteen dollars per hour when he last worked full time, approximately one year earlier. An affidavit from a CSSD employee showed that Barlow had actually received income of $5,946.75 in 2007 and $10,548.08 in 2006.

 A court "can in its discretion impute income where a party is voluntarily and unreasonably 'underemployed.'"[15] In deciding whether an obligor is unreasonably underemployed, the court "must consider the totality of the circumstances, . . . [which] include such factors as whether the obligor's reduced income is temporary, whether the change is the result of economic factors or of purely personal choices, the children's needs, and the parents' needs and financial abilities."[16] The master's report states that Barlow testified that "he was unemployed because he was waiting for a job which was suitable [so] that he could support himself and [their daughter]." That would imply Barlow was voluntarily underemployed, but the master did not specifically find that Barlow was also unreasonably underemployed. Such a finding would have had to address work history, job qualifications, and job opportunities.[17] We are therefore unable to determine whether the implied imputation of income is clearly erroneous.[18] We vacate the monthly support award of $452 and remand to the superior court for recalculation of Barlow's monthly child support obligation. If the award is to be based on imputed income, the requisite findings for imputation must be made.

### D. Whether the Superior Court Acted Improperly

Barlow argues that Judge Joannides and the master acted improperly in a variety of ways. These arguments are addressed briefly below.

#### 1. The superior court's citation to AS 25.30.300

█ Barlow challenges Judge Joannides's citation to AS 25.30.300 in the order denying Barlow's motion to dismiss for lack of jurisdiction. Barlow first argues that Thompson alone had the "responsibility to provide legal arguments" opposing his motion to dismiss, that Thompson failed to do so, and that therefore any legal authority cited by the judge was insufficient to deny his motion.

---

**15.** *Tillmon v. Tillmon,* 189 P.3d 1022, 1030 (Alaska 2008). *See* Alaska R. Civ. P. 90.3(a)(4) ("The court may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed. . . . Potential income will be based upon the parent's work history, qualifications, and job opportunities.").

**16.** *Sawicki v. Haxby,* 186 P.3d 546, 550 (Alaska 2008) (internal citations and quotation marks omitted).

**17.** *See Tillmon,* 189 P.3d at 1030.

**18.** *See O'Connell v. Christenson,* 75 P.3d 1037, 1041 (Alaska 2003).

He also argues that by citing the statute, the judge impermissibly acted as "lay counsel" for Thompson. Finally, he argues that the court's citation to the statute shows that the judge was biased against him.

These arguments are without merit. As Judge Joannides noted in her order denying Barlow's motion to dismiss for lack of jurisdiction: "A court is entitled to cite to the Alaska Statutes in its decision. The court recognizes that [Thompson] did not address [Barlow's] jurisdictional objections by opposition (written). Nonetheless a court must base its decisions on the law." We agree. And it was entirely appropriate for the court to cite a statute that controlled the disputed issue, even though the parties did not. The parties had a full opportunity to brief the jurisdictional dispute. Judge Joannides did not act impermissibly, and correctly and properly rejected Barlow's motion to dismiss.

### 2. The master's evidentiary rulings and factual findings

■ Barlow argues that two of the master's evidentiary rulings and six of the master's factual findings show that the master was biased against him. First, Barlow argues that the master was biased because the master allowed testimony from Thompson's witnesses, who had not interacted with Barlow for over eight years, but "disregarded . . . Barlow's testimony referring to 10 years ago." Barlow did not object to the testimony of Thompson's witnesses, and he does not specify what part of his own testimony the master allegedly disregarded. The master properly sustained two of Thompson's hearsay objections to Barlow's testimony; both objections concerned Barlow's proposed testimony about events their daughter had described to him, but that he had not witnessed himself.[19] There is no indication that any of the exceptions to the hearsay rule applied

here. The master was also permitted to resolve factual disputes and assess the credibility of witnesses.[20]

Second, Barlow argues that the master was biased because he allowed Thompson's witnesses to give "hearsay testimony" but did not allow Barlow to play a recording of what Barlow describes as their daughter's "first hand testimony." The master explained that, when there is no objection to hearsay testimony, the testimony comes in; but he also emphasized that he would base his report and recommendations only on admissible evidence. Barlow raised no hearsay objections to Thompson's witnesses' testimony at the hearing. And Barlow has not plausibly explained on appeal what testimony should have been excluded and why it was inadmissible hearsay under Alaska Evidence Rule 801(c). He therefore has not demonstrated it was an abuse of discretion for the master to admit or consider the testimony of any of Thompson's witnesses.

Barlow has likewise failed to plausibly explain why excluding the child's out-of-court statements was an abuse of discretion. In excluding the recording of the daughter answering Barlow's questions about her home life, the master characterized Barlow's questions as more appropriate for a custody investigation. The master also noted that the judge had ordered a custody investigation but that one or more of the parties had refused to cooperate. Regardless of whether the master's characterization was accurate, Barlow has not identified any potential hearsay exception applicable to the out-of-court statements of their daughter, who is not a party. These evidentiary rulings were not an abuse of the master's discretion, and the rulings do not show bias.

Finally, Barlow challenges six of the factual findings in the master's report and argues

---

**19.** Alaska Evidence Rule 801(c) provides: "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**20.** *See Bowman v. Blair*, 889 P.2d 1069, 1072 n. 5 (Alaska 1995) ("We review the . . . master's [factual] findings under the clearly erroneous standard. . . . Due regard shall be given to the

opportunity of the master to judge the credibility of the witnesses.") (citations omitted); *see also* Alaska R. Civ. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court.").

that the master was biased because he did not "equally weigh the factors" listed in AS 25.24.150 when the master made his custody recommendation. Testimony at the hearing supports each of the master's challenged proposed findings. The master's findings are therefore not clearly erroneous.

Also, nothing in the master's weighing of the statutory factors suggests that the master was biased against Barlow. Although "we will find the superior court abused its discretion if it '. . . assigned disproportionate weight to particular factors while ignoring others,' "[21] courts have considerable discretion in determining the importance of each statutory factor in the context of a specific case.[22] The master was not required to weigh the factors equally.[23] The factual findings therefore do not reflect an abuse of discretion, much less any bias.

### 3. The anger management assessment

■ Barlow argues that Judge Joannides was biased against him because she ordered Barlow, but not Thompson, to complete an anger management assessment at his own expense. He argues that the court based the order exclusively on "allegations of 'domestic violence,' " and that "allegations have been made by both parties."

The master—not Judge Joannides—first recommended an anger management assessment. And the master's report does not mention any allegations that Barlow committed domestic violence. Moreover, the report states that "it is apparent that Mr. Barlow has significant communication deficiencies in that he becomes argumentative when he does not get his way," indicating that the anger

management assessment requirement stemmed from the master's personal observations of Barlow's behavior, not from allegations raised by Thompson.

The master's report also states that Barlow "raised one incident of domestic violence in the Thompson household, but he had no direct knowledge and as such the testimony was of limited value to the court." The master was in the best position to evaluate the witnesses' credibility and testimony,[24] and it was permissible for him to recommend that only Barlow complete an anger management assessment. Barlow has not demonstrated that requiring him, and not Thompson, to complete an anger management assessment shows bias or was error.

### 4. Thompson's alleged interference with Barlow's visitation

■ Barlow argues that Thompson repeatedly disregarded the court's visitation order in an alleged attempt to damage the relationship between Barlow and their daughter. His appellate brief mentions three specific incidents, two of which he did not present to the superior court and therefore did not preserve for appeal. During Barlow's testimony about the one incident he did raise, Master Lack stated: "Nothing could be more clear to me than the two of you can't get along and can't talk to each other." This statement indicates that the master took into account the parties' inability to cooperate, and that the master could have found that the alleged interference was simply a result of that inability. The master was in the best position to evaluate the witnesses' credibility and testimony,[25] and the

**21.** *Puddicombe v. Dreka,* 167 P.3d 73, 75 (Alaska 2007) (quoting *Silvan v. Alcina,* 105 P.3d 117, 120 (Alaska 2005)).

**22.** *See Michele M. v. Richard R.,* 177 P.3d 830, 838 (Alaska 2008) ("Trial courts have discretion in determining what weight to give a child's preference [under AS 25.24.150]."); *Jenkins v. Handel,* 10 P.3d 586, 591 (Alaska 2000) ("[T]he superior court did not abuse its discretion in giving greater weight to other important factors [than to the children's preferences under AS 25.24.150]. . . ."); *Bird v. Starkey,* 914 P.2d 1246, 1249 n. 4 (Alaska 1996) (stating that trial court's findings regarding best interests of child under AS 25.24.150 "need not be extensive, but must

. . . give us a clear indication of the factors which the superior court considered important in exercising its discretion").

**23.** *See Michele M.,* 177 P.3d at 838; *Jenkins,* 10 P.3d at 591; *Bird,* 914 P.2d at 1249 n. 4.

**24.** *See Evans v. Evans,* 869 P.2d 478, 481 (Alaska 1994).

**25.** *See Bowman,* 889 P.2d at 1072 n. 5 ("Due regard shall be given to the opportunity of the master to judge the credibility of the witnesses.") (citations omitted).

custody order was permissible despite Thompson's alleged interference. Barlow has not demonstrated that there was an abuse of discretion by the master or the superior court.

## IV. CONCLUSION

We therefore AFFIRM the superior court's custody order but VACATE the amount of the support award and REMAND for further proceedings regarding child support.