NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LEILANI P., | ) | |
| | ) | Supreme Court No. S-18368 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-18-02008 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KEITH P., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1974 – June 21, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Leilani P., pro se, Fairbanks, Appellant. Keith P., pro se, North Pole, Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

I. INTRODUCTION

A self-represented litigant appeals the superior court's order granting her and her former husband joint legal and equally shared physical custody of their two children. We affirm the custody award and the court's refusal to award attorney's fees. Although the woman now asserts the superior court failed to consider the undisputed fact that her former husband is not the children's biological parent, she waived this issue by failing to meaningfully raise it at trial and by failing to explain why using a different

---

\*      Entered under Alaska Appellate Rule 214.

legal framework for custody would produce a different result. The woman also challenges the superior court's findings related to the custody factors, its award of joint legal custody, and the lack of attorney's fees award. Seeing no error in the superior court's rulings, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Facts

Leilani P. and Keith P. married in 2012. Leilani wanted to have children, but Keith was unable to have children. They agreed that Leilani would become pregnant by another man. As a result of this arrangement, Leilani became pregnant and gave birth to a daughter in 2015. Keith was named the father on the daughter's birth certificate.

In 2016 Leilani and Keith signed an agreement stating their intention to divorce in two years. Keith agreed that Leilani could again become pregnant by another man before the divorce so long as Keith was not listed on the child's birth certificate. Leilani became pregnant again and gave birth to a son in 2017. Because Keith and Leilani were still married, Keith was named as the father on the boy's birth certificate.[1]

### B. Proceedings

#### 1. Initial proceedings

In 2018 Keith filed for divorce. The superior court issued an interim custody order granting Leilani primary physical custody of the children and granting Keith visitation. Keith requested a hearing, asserting that he had been caring for the

---

[1] *See* AS 18.50.160(d) ("If the mother was married at conception, during the pregnancy, or at birth, the name of the husband shall be entered on the certificate as the father of the child unless (1) paternity has been lawfully determined otherwise by a tribunal, in which case the name of the father, if determined by a tribunal, shall be entered; or (2) both the mother and the mother's husband execute affidavits attesting that the husband is not the father and that another man is the father, and the mother and the other man execute affidavits attesting that the other man is the father, so long as the affidavits meet the requirements of (g) of this section.").

children 13 hours a day, four days a week while Leilani worked.  After a hearing the superior court issued a new interim order granting Leilani and Keith joint legal and shared physical custody of the children.

Because both Leilani and Keith had accused the other of sexually and physically abusing the children, the superior court also appointed a guardian ad litem (GAL) to investigate the children's situation.  The GAL reported that each parent had reported the other to the Office of Children's Services (OCS) but that the children had not disclosed physical or sexual abuse.  The GAL reported that there was severe tension between Leilani and Keith; the two seemed unable to agree on "even the most minor parental decision."  The GAL did not find evidence of abuse in either home and concluded that there was no basis for changing the existing physical custody arrangement.  The GAL recommended that Keith and Leilani continue to share physical custody of the children but that Leilani have "final say on legal custody issues."

### 2. Divorce trial

The superior court held a multi-day trial to determine property distribution and custody of the two children.  At trial Keith testified about his relationship with both children, including his initial resistance to having a relationship with their son.  He said it took him over a year to become involved with the child; initially he had wanted to disestablish paternity.  He explained that he had later accepted the child.  He accused Leilani of acting violently and testified that he reported Leilani to OCS because he believed she was abusing their daughter.  He also testified that Leilani had accused him of sexually abusing the children.  Leilani accused Keith of committing domestic violence against her and testified about several specific incidents.  She also testified that she and Keith have difficulty co-parenting the children.

The court heard testimony from other witnesses, including an OCS worker involved with the family and the psychologists who conducted evaluations of Keith and Leilani (at the GAL's recommendation).  The OCS worker testified that the agency's

investigation did not substantiate any claims of sexual abuse. The psychologist who evaluated Keith testified that he seemed protective of his children and that his psychological profile was not consistent with the profiles of others likely to abuse children. The psychologist who evaluated Leilani testified that her evaluation results indicated she posed a low-risk of child abuse.

### 3. Superior court's conclusions

The superior court issued the divorce decree. The court determined that there was no need to order division of marital property because the couple had already divided their property. The court then addressed permanent custody, granting the parties shared legal and physical custody.

The court found that Keith was a credible witness. It described Leilani's testimony as "seemingly sincere" but found her credibility lacking.

The court found that no acts of domestic violence occurred. It therefore declined to apply the statutory domestic violence presumption.[2] The court stated that "[t]hough some testimony was offered about [Leilani] damaging some personal property, insufficient details were provided for this court to reach any meaningful conclusion on the issue of the domestic violence presumption." While acknowledging that there "was evidence of possible domestic violence between the parties," the court described Leilani's alleged conduct as "a mere adult tantrum."

The court then discussed the statutory best interests factors.[3] It found that none of the factors favored either parent. The court briefly addressed the issue of

---

[2] *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

[3] *See* AS 25.24.150(c) ("In determining the best interests of the child the court shall consider (1) the physical, emotional, mental, religious, and social needs of

paternity, stating that it would "not make a finding as to whether [Keith] is entitled to be a parent of the children and [would] rely solely on the birth certificates to dictate the legal parents of the children for purposes of determining custody."

### 4. Order on reconsideration

Leilani moved for reconsideration of the custody order. She argued that Keith was not the legal parent of their son, that joint legal custody should not have been ordered because she and Keith were unable to co-parent, and that the court failed to consider her testimony about domestic violence.

The superior court denied reconsideration on those grounds. The court explained that it had declined to address paternity because neither party raised the issue at trial. It considered the issue "resolved" and had found it was in the children's best interests to have "these two parents in their lives, two people known to the children to be their parents."

The court then found no grounds for reconsidering its grant of joint legal custody. It explained it had "concerns with giving either side sole legal custody," stating it had "medical concerns" if the children were in Leilani's care and "educational and social concerns" if the children were in Keith's care. It explained joint legal custody "would balance the two extremes and allow the children to get their medical, educational, and social needs fulfilled," despite Leilani and Keith's difficulty co-

the child; (2) the capability and desire of each parent to meet these needs; (3) the child's preference if the child is of sufficient age and capacity to form a preference; (4) the love and affection existing between the child and each parent; (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ; (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents; (8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child; (9) other factors that the court considers pertinent.").

parenting. The court also clarified that it had considered Leilani's testimony on domestic violence, but that it did not credit either her or Keith's testimony on the topic. With no other corroborating evidence offered, the court determined there was insufficient evidence to find that domestic violence occurred.

## III. DISCUSSION

### A. Leilani Waived The Argument That The Court Should Have Used A Different Framework To Evaluate Custody Due to Keith's Parental Status.

On appeal Leilani asserts that Keith is not the children's parent and argues that the court failed to take this status into account.[4] But Leilani does not explain how Keith's parental status should have affected the superior court's analysis. Her appellate brief cites AS 25.24.150(c), which governs custody disputes between parents, and invokes the best interests factors contained in that statute. And she did not explain in pleadings or closing argument to the superior court how Keith's status affected the legal framework for custody. The superior court explained that it "considered this issue on its own accord" even though "hardly any evidence or argument was introduced on this issue" at trial and the parties "did not dispute that [Keith] was the legal father." The court ultimately applied the custody framework for parents because it did not believe Keith's parental status "was a genuine issue between the parties."[5] We agree with the superior court's characterization of the proceedings.

---

[4] There are various statutes used to determine if someone is the parent of a child. *See, e.g.*, AS 25.20.045 (providing that a child conceived through artificial insemination by consenting spouses is considered "the natural and legitimate child of both spouses"); AS 25.20.050(a) (providing for legitimation of child by subsequent marriage of parents, acknowledgement in writing, or adjudication).

[5] Leilani conceded below that Keith is effectively the children's psychological parent — a person who "on a day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills the child's psychological need for an

Because Leilani did not argue for a different custody framework before the superior court or on appeal, she has waived the argument that the superior court erred by applying the best-interests framework under AS 25.24.160.[6]

**B.      The Superior Court Did Not Clearly Err By Finding That No Domestic Violence Occurred.**

Leilani argues the superior court clearly erred by failing to make domestic violence findings and that it then erred by failing to apply the domestic violence presumption. The superior court found that neither party's testimony accusing the other of domestic violence was credible. Given these credibility determinations, to which we give great deference,[7] the court did not clearly err by finding that no acts of domestic violence were committed. Accordingly it had no basis to apply the statutory domestic violence presumption against custody.[8]

---

adult" — describing Keith as "the only father they know" and inviting the court to award him shared physical custody. *Horne v. Touhakis*, 356 P.3d 280, 281 n.1 (Alaska 2015). The record supports this characterization of Keith. A psychological parent may obtain legal and physical custody of a child against a birth parent's wishes. *See Rosemarie P. v. Kelly B.*, 504 P.3d 260, 267-68 (Alaska 2021) (affirming order of joint legal custody and equally shared physical custody between birth parent and psychological parent upon finding that denying custody to psychological parent would be detrimental to child). So even if Keith is not legally considered the children's parent (and we express no opinion on this point), it is proper to affirm an order awarding him joint legal and shared physical custody.

[6]      *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 & n.7 (Alaska 1991) (holding self-represented litigant's arguments waived due to inadequate briefing).

[7]      *Laybourn v. City of Wasilla*, 362 P.3d 447, 452 (Alaska 2015).

[8]      AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.").

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[9] We "give particular deference to the superior court's factual findings when . . . they are based primarily on oral testimony, because the superior court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[10]

The superior court found the evidence presented "was not strong enough to justify a [domestic violence] finding." Voicing "significant concerns about the credibility of both parties," the court "ultimately found that neither side's allegations could stand with the lack of evidence and credibility."

Leilani's brief points to a number of specific incidents involving Keith. The parties offered different accounts of these incidents at trial. As described by Keith, they either did not happen or did not satisfy the elements of domestic violence.[11] As described by Leilani, they could be acts of abuse. But because the court found neither party credible in this area — a finding to which we defer — it was not required to accept either of their contentions. In the absence of other testimony or evidence, we do not have a firm and definite conviction that it was a mistake to find that no acts of domestic violence occurred.

Leilani points out that Keith was convicted of a crime of domestic violence in the past, but the superior court need not find Leilani's testimony credible based on that fact alone. Reviewing the record, we cannot say that this sole conviction

---

[9]     *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015) (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

[10]     *Laybourn,* 362 P.3d at 452 (alteration in original).

[11]     Domestic violence is defined for purposes of custody determinations as "a crime against the person under AS 11.41," which includes assault and reckless endangerment, as well as other specific crimes such as harassment. AS 25.90.010; AS 18.66.990(3)(A).

is enough on its own to establish that Keith has a "history of domestic violence."[12] We see no error in the court's consideration of the domestic violence issue.

**C.     The Superior Court Did Not Clearly Err When It Determined Keith Was Able To Meet The Children's Needs.**

Leilani argues that the superior court clearly erred when it determined Keith was able to care for the "physical, emotional, mental, religious, and social needs" of the children.[13] She asserts that that Keith's "suspicion and mistrust" will damage the children, that he will try to isolate the children because he has a personal tendency to socially alienate, that he showed lack of judgment and empathy by allegedly refusing to kennel his dog after it bit one of the children, and that he will not meet the children's religious needs. She also argues the superior court failed to consider the results of Keith's psychological evaluation when it considered Keith's ability to meet the children's needs.

The court's conclusion that neither parent was better able to care for the children's needs is well supported by the record. We "will not overturn a trial court's finding based on conflicting evidence, and we will not re-weigh evidence when the record provides clear support for the trial court's ruling."[14] Keith testified about his commitment to making a pleasant home for both children and his efforts to meet their medical needs. The superior court noted it had concerns about both Leilani's and Keith's ability to meet the children's needs on their own. We see no error in the court's conclusion that this factor did not favor either parent.

---

[12]     AS 25.24.150(g); AS 25.24.150(h) ("A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence.").

[13]     AS 25.24.150(c)(1)-(2).

[14]     *Angelica C. v. Jonathan C.*, 519 P.3d 334, 342-43 (Alaska 2022) (quoting *In re Adoption of Hannah L.*, 390 P.3d 1153, 1156 (Alaska 2017)).

Nor do we see error in the limited weight the court gave Keith's psychological evaluation.[15] The court discussed the results of the psychological evaluation in its decision, but did not mention it when analyzing the custody factors. The evaluation was not so alarming or conclusive that the court was required to give it much weight. The psychologist who performed the evaluation testified that although Keith had tendencies to be angry and distrustful, the evaluation did not show Keith was likely to abuse the children. In fact it suggested that Keith appeared protective of his children. The psychologist also explained that the evaluation can indicate a general likelihood someone will act a certain way but "does not predict the future."

The superior court did not clearly err when it determined Keith was able to meet the children's needs.[16]

### D. The Superior Court Did Not Abuse Its Discretion By Awarding Joint Legal Custody.

Leilani argues that the superior court abused its discretion by granting the parties joint legal custody because the court's own findings indicate they cannot work together. Although this is an extremely close question, there is enough evidence in the record to support the court's ruling.

"[A] court may award shared custody to both parents if shared custody is determined by the court to be in the best interests of the child."[17] "The preference of

---

[15] *See Burns v. Burns*, 466 P.3d 352, 361 (Alaska 2020) (holding that superior court did not err by assigning "limited or no weight" to parent's psychological evaluation in custody dispute when court was presented with other evidence upon which it based its decision).

[16] *Brett M. v. Amanda M.*, 445 P.3d 1005, 1009 n.9 (Alaska 2019) ("Once a court has identified the best interests factors relevant to its decision, we review the individual findings for clear error and how the factors were balanced for abuse of discretion.").

[17] AS 25.20.060(c); *see also* AS 25.24.150(c) (laying out statutory best interests factors).

the legislature is for parents to share joint legal custody."[18]  But "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."[19]  When the court has determined that parents can sufficiently communicate with each other to exercise joint legal custody, we review this finding for clear error.[20]  We will not disturb the superior court's factual findings unless review of the entire record leaves us with a "definite and firm conviction" that a mistake has been made.[21]

We have previously affirmed an award of joint legal custody to parents despite communication difficulties when there was at least some evidence the parties were able to cooperate.  For example, in *Dragseth v. Dragseth*, the custody investigator testified that there had been a "breakdown in [the parents'] ability to communicate," yet both the mother and father testified that they had been able to agree on a visitation schedule and were able to devise their own custody schedule.[22]  The mother argued on appeal that the superior court clearly erred by finding that there was "no evidence" the parties would have difficulty agreeing on major issues.[23]  But given the conflicting evidence, we were not convinced the superior court was clearly mistaken in finding the parents "able to communicate effectively enough to share legal custody."[24]

This case is even closer than *Dragseth*.  As in that case, a neutral figure (here a GAL) reported that Leilani and Keith were "unable to agree on even the smallest of issues regarding parenting the children" and noted the "animosity" between them.

---

[18]  *Co v. Matson*, 313 P.3d 521, 525 (Alaska 2013) (citing *Farrell v. Farrell*, 819 P.2d 896, 898 n.1 (Alaska 1991)).

[19]  *Farrell*, 819 P.2d at 899.

[20]  *Dragseth v. Dragseth*, 210 P.3d 1206, 1209-10 (Alaska 2009).

[21]  *Id.* at 1209.

[22]  *Id.* at 1209-10.

[23]  *Id.*

[24]  *Id.* at 1210.

The superior court itself discredited the parties' statements that they were willing to work together, and it found that they were on a "route to destruction." But it also found that Leilani and Keith had "the ability to communicate and coordinate with each other to provide for their children's physical care" and that they acknowledged the importance of regular communication about the children. Unlike in *Dragseth*, the court did not expressly state that the parties were able to work together enough to exercise joint legal custody; it expressed hope that they would be able to do so. Yet considering the court's comments in their entirety, the most plausible reading is that the court believed the parties had the *capacity* to work together despite their frequent conflict. To order joint legal custody while believing that the parents were not capable of working together enough to exercise joint custody would be highly illogical, and we do not believe that is what the superior court intended. Thus we must determine whether there is enough evidence to support the finding that Keith and Leilani had the capacity to communicate "effectively enough" to exercise joint legal custody.

We are not "firmly convinced" that the court erred in so finding. Despite ample testimony about Keith and Leilani's disagreements over the children's medical care and schooling, there was substantial testimony from both parents that they were able to communicate well enough to exchange the children fairly regularly. Keith appeared to have acquiesced on some of the schooling disagreements by the time the superior court entered its order on reconsideration. And the court addressed the parties' conflicts over medical care by mandating specific communication requirements for the children's medical appointments. In light of the evidence, we do not have a definite and firm conviction that the superior court erred by finding the parties can communicate well enough to exercise joint legal custody.

### E. Leilani Waived Her Request For Attorney's Fees.

Leilani asserts the superior court erred by not awarding her attorney's fees. But Leilani waived her request by failing to timely move for them.

A motion for attorney's fees must be brought within 10 days of the distribution of the judgment or it is waived.[25] If a litigant files after the 10-day window, the superior court may exercise discretion to grant attorney's fees but is not required to do so.[26]

Nothing in the record shows that Leilani filed a motion for attorney's fees within the required 10 days of receiving the judgment, nor does Leilani assert that she did so. Although Leilani's attorney made a request for attorney's fees in closing argument, counsel never filed a motion requesting a specific amount of fees, supported by an affidavit attesting to the amount of fees incurred.[27] Leilani's failure to file a motion for attorney's fees waived her right to recover them.

## IV. CONCLUSION

We AFFIRM the superior court's judgment.

---

[25] Alaska R. Civ. P. 82(c) ("A motion is required for an award of attorney's fees under this rule or pursuant to contract, statute, regulation, or law. . . . Failure to move for attorney's fees within 10 days, or such additional time as the court may allow, shall be construed as a waiver of the party's right to recover attorney's fees."); *see also Worland v. Worland*, 193 P.3d 735, 741 (Alaska 2008) (noting that 10-day requirement applies to motions for attorney's fees in divorce actions).

[26] *Worland*, 193 P.3d at 741-42; *see also* Alaska R. Civ. P. 6(b)(2) (granting court discretion to accept late filing if failure to file was result of excusable neglect).

[27] Alaska R. Civ. P. 82(c).