Erma JENKINS, Appellant,

v.

John HANDEL, Appellee.

No. S–9122.

Supreme Court of Alaska.

Oct. 13, 2000.

⚷19.3(2)

⚷19.3(5)

Michael J. Zelensky, Ketchikan, for Appellant.

Bryan T. Schulz, Holman & Schulz, Ketchikan, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

### I. INTRODUCTION

Erma Jenkins appeals the superior court's denial of her motion to modify custody. Because the superior court carefully considered and weighed the factors relevant to the best interests of the children, we conclude that the superior court did not abuse its discretion. We therefore affirm.

### II. FACTS AND PROCEEDINGS

#### A. Facts

Erma Jenkins and John Handel lived together for approximately ten years. While living in Thorne Bay, they had two children, A.H., born May 4, 1983, and L.H., born March 27, 1985. Jenkins and Handel never married. The children have lived in Thorne Bay since their birth.

The couple separated in 1987, and Jenkins filed for custody of A.H. and L.H. In August 1987 Jenkins moved to Castle Rock, Washington, where her family lives.

In November 1988 the superior court awarded primary physical custody of the children to Handel. Jenkins was awarded Christmas and summer visitation. Handel was ordered to pay for the children's transportation to Jenkins's home in Washington. Jenkins was also ordered to pay $100 per month in child support for ten months of the year.

During the months of December 1992, 1994, and 1995, Handel was unable to transport A.H. and L.H. to Castle Rock for Jenkins's Christmas visitation. When Jenkins raised this issue to the superior court, the superior court awarded her extra visitation in the summer.

#### B. Proceedings

In January 1997 Jenkins filed a motion to modify custody and a motion for interim custody of A.H. and L.H. She argued that the court should award primary physical custody of the children to her because they wished to live with her in Castle Rock. In support of her motion, she presented affidavits from A.H. and L.H., then thirteen and eleven years old respectively. Jenkins further argued that Handel should no longer have custody of the children because he was uncooperative in complying with Christmas visitation. Handel opposed Jenkins's motions.

In May 1997 the trial court ordered that, in the future, the party receiving A.H. and L.H. for visitation would pay for their transportation. However, the court delayed a ruling on custody until after completion of a home study of Jenkins's living conditions. The home study stated, among other things, that: (1) Jenkins had two DWI arrests, one in 1988 and one in 1996; (2) the children wanted to stay with Jenkins; (3) both children reported performing poorly in school in Thorne Bay; and (4) L.H. appeared to be depressed. The superior court denied Jenkins's motions and ruled that Handel would continue to have primary physical custody of A.H. and L.H. Jenkins moved for reconsideration. The trial court denied her motion.

In August 1998 Jenkins again moved for interim custody and modification of custody, arguing that Handel had been uncooperative about the Christmas visitation, that her living conditions had improved because she and her fiancé had just purchased a new home, and that A.H. and L.H. preferred to live with her. She also moved for the appointment of a *guardian ad litem* to represent the interests of A.H. and L.H. The superior court appointed Julie deBourguignon as *guardian ad litem* and denied Jenkins motion for interim custody and modification of custody.

In denying the motion to modify custody, the superior court ruled that the changes in circumstances, though substantial, were insufficient to justify a change in custody. The court acknowledged the improvement in Jenkins's housing situation as well as the preference of A.H. and L.H. to live with Jenkins. But the superior court found that the balance of factors, including stability, the children's need for "skillful parental supervision," and Handel's ability to provide "more mature parental judgment," weighed in favor of maintaining the present custody arrangement. The existence of a romantic relationship between A.H. and a twenty-year-old man living in Jenkins's hometown was especially significant. The court found that there was a need for parental supervision and that Jenkins lacked vigilance in her supervision of the children.

Jenkins filed a motion for reconsideration in March 1999 which the superior court denied. Handel was awarded $1,500 in attorney's fees.

Jenkins appeals.

## III. STANDARD OF REVIEW

■■■ The trial court has broad discretion in the determination of child custody issues.[1] We will reverse a trial court's resolution of custody issues only if, after a review of the entire record, we are convinced that the trial court abused its discretion or that the controlling factual findings made by the trial court are clearly erroneous.[2] "Abuse of discretion is established if the trial court considered improper factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination."[3] A factual finding by the trial court will be found clearly erroneous when we are "left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding."[4]

## IV. DISCUSSION

A. *The Superior Court Did Not Err in Its Consideration of the Child Custody Modification Factors.*

Jenkins argues that the trial court erred in denying her motion because it improperly weighed the custody factors. Specifically, she argues that the trial court: (1) gave insufficient weight to the stated custody preference of the children; (2) gave insufficient weight to her improved living and working conditions; and (3) did not consider Handel's previous noncompliance with Christmas visitation. We reject each of these arguments.

1. *The superior court properly considered and weighed the appropriate factors in the best interests of the children.*

■■■ A motion to modify custody will be granted only if two conditions are satisfied: (1) the non-custodial parent must establish that a change in circumstances has occurred; and (2) the modification must be in the best interests of the child.[5] The required change in circumstance must be significant or substantial,[6] and must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify.[7]

■■■ The superior court's analysis of the circumstances in this case took into account all of the relevant "best interests of the child" factors set out in AS 25.24.150(c),[8] including the needs of A.H. and L.H., the capability of Jenkins and Handel to meet those needs, A.H. and L.H.'s preferences, the

---

1. *See Valentino v. Cote,* 3 P.3D 337, 339 (Alaska 2000).

2. *See Gratrix v. Gratrix,* 652 P.2d 76, 79–80 (Alaska 1982).

3. *Id.* at 80.

4. *Dingeman v. Dingeman,* 865 P.2d 94, 96 (Alaska 1993) (quoting *Brosnan v. Brosnan,* 817 P.2d 478, 480 (Alaska 1991)).

5. *See* AS 25.20.110(a) ("An award of custody of a child ... may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."); *see also Nichols v. Mandelin,* 790 P.2d 1367, 1372 (Alaska 1990); *see also S.N.E. v. R.L.B.,* 699 P.2d 875, 878 (Alaska 1985) (noting that the burden of proving change in circumstances is on moving parent).

6. *See Nichols,* 790 P.2d at 1372; *S.N.E. v. R.L.B.,* 699 P.2d at 878.

7. *See King v. King,* 477 P.2d 356, 359 (Alaska 1970).

8. AS 25.24.150(c) provides:

The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider
(1) the physical, emotional, mental, religious, and social needs of the child;
(2) the capability and desire of each parent to meet these needs;
(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

relationship between the children and their parents, and the stability of keeping A.H. and L.H. in the same environment. The superior court acknowledged that substantial changes in circumstances had taken place, especially with respect to Jenkins's housing situation. However, the court concluded that the balance of factors had not shifted substantially in Jenkins's favor.

In support of its decision, the superior court stated that it adhered to the analysis set out in its July 1997 order on Jenkins's previous motion to modify custody. In both decisions, the superior court based its decision on five factors: (1) the expectations of A.H. and L.H. that many of their complaints about life would be eliminated by moving in with Jenkins were wrong; (2) the stability of remaining in the same community in which A.H. and L.H. were born and raised; (3) the relatively better ability of Handel and his fiancée Jeannie Muir to meet A.H. and L.H.'s emotional and parental support needs; (4) Jenkins's work schedule; and (5) Handel's superior housing situation. The superior court concluded in both instances that A.H. and L.H.'s preference to live with Jenkins was outweighed by these five factors.

In this case, the superior court again found Handel and his fiancée better situated to provide parental supervision and to exercise "more mature parental judgment" in their dealings with A.H. and L.H. The superior court based this finding on Handel and Muir's vigilance in monitoring the activities of A.H. and L.H., Muir's employment with the Thorne Bay School District, and the fact that A.H. is more willing to truthfully confide in Muir than in Jenkins. While acknowledging the preference of A.H. and L.H. to live with Jenkins, the superior court's ruling

that their wishes were outweighed by other factors is rationally supported.

2. *The superior court gave proper weight to A.H. and L.H.'s desire to live with Jenkins.*

■ Jenkins contends that the superior court "gave too little weight" to the clearly-expressed preference of A.H. and L.H., who were fifteen and thirteen years old at the time of the court's ruling, to live with her.

Alaska Statute 25.24.150(c)(3) requires superior courts making a custody determination to consider the preference of a child, if he or she is of sufficient age and capacity to form a preference.[9] In *Valentino v. Cote*,[10] we held that the well-reasoned preference of a sixteen-year-old can be a deciding factor in the superior court's decision to modify custody.[11] The superior court's rationally supported conclusions in this case provide a counterpoint to the facts in *Valentino*, in what can be a delicate and difficult determination for the court.[12]

The superior court interviewed A.H. and L.H. and took their preference into account. The superior court stated that it was impressed with the way the teenaged A.H. and L.H. expressed themselves in their interviews. But the superior court concluded that their preferences, and the reasoning behind them, evidenced a great need for parental supervision and were outweighed by their need for the "substantial guidance" that the court found Handel better equipped to provide. This conclusion is amply supported by the record.

First, A.H. and L.H.'s preferences are not mature and well-reasoned. Their desire to live with their mother is primarily motivated

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

9. AS 25.24.150(c)(3).

10. 3 P.3D 337 (Alaska 2000).

11. *See id.* at 340–41. *See also Veazey v. Veazey,* 560 P.2d 382, 390 n. 11 (Alaska 1977) (overruled by statute on other grounds) (suggesting that while young child's preferences are often unreliable as he or she can be easily influenced by behavior of his or her parents, "a relatively mature teenager's reasoned preference is not so lightly to be disregarded").

12 *See Sanguinetti v. Sanguinetti,* 628 P.2d 913, 916 (Alaska 1981) ("We have repeatedly stated that child custody determinations are among the most difficult in the law . . . .").

by their desire for greater social and recreational opportunities. Additionally, the record shows that the romantic involvement of the then fifteen-year-old A.H. with a twenty-year-old man in Castle Rock played a major role in her desire to move in with Jenkins. According to deBourguignon, A.H. is "vocal about wanting to move south" because "[t]here is a 20 year old man she is involved with romantically, a relationship which her mother has not discouraged." The statements of deBourguignon are further confirmed by the testimony of Handel's fiancée, Jeannie Muir, in whom A.H. confided. Muir testified that A.H. had told her that A.H. and the young man were in love and having a sexual relationship and that A.H. wanted to start taking birth control pills before she went down to Castle Rock that Christmas. In addition, Muir, deBourguignon, and Handel all testified that they had seen a letter from A.H. to the young man. The letter, which was opened without A.H.'s knowledge by Handel and Muir, contained condoms.

Second, the superior court concluded that A.H. and L.H. needed to be in an environment where their actions would be well-supervised and monitored. This conclusion was largely based on the "different approaches by the adults" to A.H.'s relationship with the young man. Muir's testimony concerning A.H.'s admissions about her relationship with the young man revealed that A.H. feels comfortable enough to confide in Muir about important issues in her life. A.H. does not appear to have a similar relationship with Jenkins, to whom she directly lied about her romantic liaison. Handel and Muir's behavior with respect to A.H.'s relationship with the young man, including their concern and inquiries, reveals a higher level of concern and supervision of A.H.'s activities than Jenkins provides. Also, Jenkins's work hours on afternoons and weekends give her fewer opportunities to supervise A.H. and L.H. An additional factor supporting the superior court's analysis is that Muir works for the Thorne Bay School District and has a work schedule that keeps her home in the afternoon and on the weekends.

Third, the superior court concluded that A.H. and L.H.'s preferences should not govern its custody decision because it believed that the thirteen-year-old L.H.'s preferences were influenced by A.H. and the adults in Castle Rock. This is supported by the record. According to deBourguignon, L.H.'s feelings were "greatly influenced by her sister" and L.H. "wants to please [A.H.]." Given that L.H.'s preference to live with Jenkins was the product of the influence of others, the superior court did not abuse its discretion in giving greater weight to other important factors and in finding that Handel and Muir were in a better position to provide supervision.

3. *The superior court's consideration of Jenkins's changes in living and working conditions was not error.*

█ Jenkins also contends that the superior court did not give sufficient weight to the improvement in her living and working conditions. In her motion to the superior court, she indicated that she had purchased a new home with her fiancé and that her work hours had improved substantially because she no longer worked a "swing shift."

The superior court gave adequate consideration to these matters. The superior court explicitly recognized the substantial improvement in Jenkins's housing situation, but it based its ultimate decision on other factors. The record supports the superior court's findings, including A.H. and L.H.'s need for parental supervision and the stability and continuity of keeping A.H. and L.H. in the same home in which they were raised.

The superior court also did not abuse its discretion in finding that the change in Jenkins's working conditions was not a substantial improvement over her previous arrangements. Under her previous schedule, she worked a swing shift which enabled her to spend only one hour during the day with A.H. and L.H. She testified at the hearing that she had been laid off but hoped to be back to work soon. Jenkins argues that she applied for a job which would require her to work only three days a week on the day shift. However, she had not yet been offered this job. Furthermore, although the day shift work schedule would give her weekday evening hours to spend with A.H. and L.H., she

would still be at work during the afternoons and evenings of every weekend. The evidence does not support Jenkins's contention that her work schedule has changed for the better. The superior court did not err in finding that the changes to her work schedule did not strengthen her case.

### 4. *Failure to consider Handel's previous noncompliance with the Christmas visitation was not error.*

■ Jenkins also argues that Handel's "unevenness" in complying with the visitation order requiring him to send A.H. and L.H. to Castle Rock for Christmas demonstrates that the "factor of willingness to allow the other parent frequent and liberal visitation" has shifted in Jenkins's favor. Handel was unable to send A.H. and L.H. to Castle Rock during the Christmases of 1992, 1994, and 1995.

The superior court addressed this issue in Jenkins's 1997 motion to modify custody and made an effort to avoid this problem in the future by ordering that the party receiving the children would make and pay for all transportation arrangements. Nothing in the record shows that Handel has not complied with the superior court's visitation order since 1997. Most importantly, as discussed above, the superior court found many other factors to be more important in determining that the present custody arrangement is in the best interests of A.H. and L.H. The superior court did not abuse its discretion in placing little weight on this issue.

### B. *Jenkins Is Not Entitled to a New Hearing.*

■ Jenkins argues that the superior court violated her due process rights by failing to "afford [her] discovery" of the letter A.H. wrote to the young man, which contained condoms, and "material confirming the affair." She further contends that she is entitled to a new hearing because the superior court's failure to provide her with this material "harmed [her] interests as a party." Jenkins believes that Handel was able to

withhold "information to [his] successful advantage in this close litigation." These contentions lack merit.

First, Jenkins has waived these arguments because she did not raise them below.[13] Jenkins was made aware of the letter's existence the day before the hearing; however, she did not seek a continuance or any other relief on this ground prior to the commencement of the hearing. Jenkins also failed, on four occasions during the hearing, to object to testimony about the letter. Additionally, the content of the letter was not disclosed at the hearing. Because Jenkins did not preserve her objection to consideration of evidence concerning the letter at the hearing, she cannot now raise the issue on appeal.

■ Second, the superior court had no duty to provide the letter to Jenkins. There is no evidence in the record showing that Jenkins requested disclosure of documents from Handel prior to the hearing. No discovery orders were entered in this case. Indeed, the superior court was unaware of the letter's existence prior to hearing testimony.

■ Third, Jenkins's argument that her due process rights were violated by nondisclosure of the letter fails because she had notice of the letter one day prior to the hearing. Furthermore, the *guardian ad litem's* report filed in January 1999 gave her notice of the purported affair between A.H. and the young man. This report explicitly stated that A.H. had indicated that she was romantically involved with a twenty-year-old man in Castle Rock and that Jenkins had not discouraged the relationship. The record shows that Jenkins was aware of this allegation because she testified concerning conversations she had with A.H. about A.H.'s romantic relationship and because she filed an objection to the *guardian ad litem's* report in February 1999. In her objection, Jenkins explicitly acknowledged the *guardian ad litem's* statement that A.H. was involved with a twenty-year-old. Jenkins stated that the allegation was false because "she [ ] polled [A.H.] and the 20–year–old" on the matter.

---

**13.** *See Reid v. Williams,* 964 P.2d 453, 456 (Alaska 1998) ("We will ordinarily not consider issues unless they were raised in the trial court.").

Jenkins's response to the *guardian ad litem's* report demonstrates that she had adequate notice that Handel or deBourguignon would attempt to raise the issue of A.H.'s romantic relationship at the hearing. Therefore, there was no violation of Jenkins's due process rights.

Because Jenkins waived her arguments concerning the letter by failing to object, because the superior court had no independent obligation to provide Jenkins a letter about which it had no knowledge, and because Jenkins was aware of the affair between her daughter and the young man well in advance of the hearing, we conclude that Jenkins is not entitled to a new hearing.

### C. Omission of the Guardian Ad Litem's Report in the Superior Court Order Was Not Error.

Jenkins contends that *guardian ad litem* deBourguignon's report was "objectionable" and that the superior court erred in failing to mention the report which "must have had an impact" on its decision. Jenkins further argues that deBourguignon did not fulfill her "duties of zealous representation and loyalty." We disagree.

#### · 1. It was not error for the superior court not to discuss the guardian ad litem in its order.

▇▇ The superior court's order provided a detailed discussion of the elements that influenced its decision, including the testimony of Jenkins, Handel, and Muir, and the statements made by A.H. and L.H. in their interviews with the court. None of the deciding factors discussed in the order were derived solely from deBourguignon's testimony or report; they were all drawn from or supported by the testimony of others. Jenkins's argument that deBourguignon's report and testimony "must have had an impact on the trial court's decision" is purely speculative. The superior court's conclusions are rationally supported by other evidence. It

was not an abuse of discretion for the superior court not to mention the *guardian ad litem*, or her report, in its order.

#### 2. The guardian ad litem was not disloyal to A.H. and L.H.'s interests.

Jenkins argues that deBourguignon did not fulfill her duties as *guardian ad litem* because she advocated for custody to remain with Handel despite the wishes of A.H. and L.H., thereby forsaking her duties of loyalty and zealous representation.

▇▇ This precise argument is directly refuted by AS 25.24.310(c), which provides that a *guardian ad litem's* duty of advocacy is with respect to the child's best interests, *not* the child's preferences.[14] In the present case, deBourguignon did advocate in what she judged to be the best interests of A.H. and L.H., which required consideration of their performance in school, their need for parental supervision, and the effects of A.H.'s age-inappropriate romantic relationship. In making her determination, she took into account A.H. and L.H.'s fondness for horseback riding, suggesting that they should be permitted to visit their mother in the summer for this reason, as well as their growing need for the freedom to make age-appropriate decisions. The record shows that deBourguignon did advocate in the best interests of A.H. and L.H. as she perceived them.

Jenkins also argues that deBourguignon violated her duty as a *guardian ad litem* by failing to disclose to Jenkins the existence of the letter that contained the condoms, thereby failing to aid the fairness of court proceedings.

▇▇ We have stated that a *guardian ad litem's* duties do not extend to other parties in the litigation.[15] As *guardian ad litem*, deBourguignon's duties did not require her to disclose the existence of the letter given the previous disclosure of the existence of the relationship between A.H. and the young

---

**14.** AS 25.24.310(c) provides, in relevant part, that "[t]he court shall require a guardian ad litem when, in the opinion of the court, representation of the child's best interests, to be distinguished from preferences, would serve the welfare of the child." *See Sanguinetti*, 628 P.2d at

916 (noting that *guardian ad litem's* duty is to protect best interests of child).

**15.** *See Karen L. v. State, Dept. of Health and Social Servs.*, 953 P.2d 871, 878 (Alaska 1998).

man. The *guardian ad litem's* failure to disclose the existence of the letter to Jenkins was not improper.

## V. CONCLUSION

The denial of Jenkins's motion to modify custody was not an abuse of discretion. We therefore AFFIRM.