*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NANCY M., | ) | |
| | ) | Supreme Court No. S-14791 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-07901 CI |
| v. | ) | |
| | ) | |
| JOHN M., | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 6823 - September 13, 2013 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellant. Allen M. Bailey, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating]

BOLGER, Justice.

## I.      INTRODUCTION

The parties to this custody dispute initially lived together in Alaska, but their relationship ended before the birth of their daughter, and the mother relocated to California to attend graduate school. After lengthy litigation, the superior court awarded the father primary custody based on its findings that: (1) the father was more likely to foster a close and continuing relationship between the mother and the child; (2) the

stability factor slightly favored the father; and (3) the mother's flexibility in caring for the child would be slightly limited due to the impending birth of her second child.

The mother appeals, arguing that the superior court's findings are clearly erroneous. She also argues that the court erred in its application of the custody statute, in disregarding the custody investigator's recommendations, and in formulating various aspects of the final custody order. We affirm the custody order, but we remand on the issue of visitation costs to clarify ambiguity in the court's order.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

John M. and Nancy M. are the parents of four-year-old Nina.[1] The couple had an on-again, off-again relationship between 2007 and 2009, when Nina was born.

In 2010, Nancy relocated to California to attend graduate school. She resided in an apartment in Los Angeles. At the time of trial, Nancy was in the process of completing her master's degree and had applied to various doctoral programs in California. Nancy became pregnant again in 2011, and she was due to give birth sometime in the spring of 2012.

John continued to reside in Alaska, employed as a professor at the University of Alaska. His job involved occasional travel to conferences outside of Anchorage. In 2011, John purchased a home in Anchorage. John has family in the Los Angeles area, including his mother, father, and brother.

### B.  Proceedings

Shortly after Nina's birth, John initiated legal proceedings to obtain sole legal and physical custody of Nina. Although Nancy wished to relocate with Nina to California to attend graduate school, the superior court prohibited Nancy from taking the

---

[1]     Pseudonyms have been used to protect the privacy of the parties.

child out of Alaska until the custody hearing had taken place. Following hearings in February and August 2010, the court issued an interim custody order awarding the parties joint legal custody and John primary physical custody of Nina. In October 2010, the superior court issued another interim order stating that the parties had agreed to share interim legal and physical custody of their daughter until trial. It provided that Nina would spend alternating three-month periods with her parents in their respective homes, which were now in different states because Nancy had relocated to California.

The superior court appointed a custody investigator. The investigator's final report recommended that the parties continue to share physical custody equally (continuing the then-current schedule alternating three-month periods of custody) until Nina began kindergarten in 2014. The custody investigator acknowledged that once Nina began attending school, the schedule would need to be altered so that one parent had custody during the school year and the other during the summer, but declined to recommend which parent should take which role.

The final, two-day custody trial occurred on January 31 and February 1, 2012. The court heard testimony from both parties, as well as from the custody investigator and from John's mother, Lisa. John argued at trial that he was the more stable parent and was more willing to foster a close and continuing relationship between Nina and the other parent. He proposed a custody schedule that would gradually increase his custodial time over the next three years until he had primary custody once Nina began school.

Nancy proposed that the parties continue to share custody equally, alternating custody every three months until Nina began kindergarten. But she argued that once school started, she should be awarded primary custody. The custody investigator's testimony echoed her 2012 report. She recommended that the parties share

custody equally until 2014, when Nina began kindergarten; at that point, she proposed that the court determine which parent should have primary custody.

The superior court granted the parties joint legal custody and shared physical custody of Nina. The order provided that over the next three years, physical custody would transition to a schedule under which John had primary physical custody. The superior court considered the statutory custodial factors under AS 25.24.150(c).[2]

---

[2]     AS 25.24.150(c) provides:

The court shall determine custody in accordance with the best interests of the child under AS 25.20.060--25.20.130. In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent

(continued...)

It found that Nina had no special needs and that the second, fourth, and seventh factors favored neither party. It gave no weight to the third and eighth factors. But the court found that the fifth and sixth factors — the length of time that the child has lived in a stable environment and the desirability of maintaining continuity, and the desire and ability of each parent to allow an open and loving relationship between the child and the other parent — both favored John. Finally, the court noted that due to the impending birth of her second child, Nancy's flexibility to meet Nina's needs was slightly more limited than John's. Nancy appeals.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in determining custody awards so long as the determination is in the child's best interests."[3] We will not reverse a custody order unless the superior court abused its discretion or its controlling factual findings are

---

**2** (...continued)
shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

**3** *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)) (internal quotation marks omitted).

clearly erroneous.[4]  The superior court abuses its discretion if it "considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[5] "Factual findings are clearly erroneous if a review of the record leaves us 'with a definite and firm conviction that a mistake has been made.' "[6]  "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[7]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Clearly Err In Finding That John Was More Likely To Facilitate A Relationship Between Nina And The Other Parent.

Nancy argues that the superior court's finding that John was more likely to facilitate a relationship between Nina and the other parent is clearly erroneous.  John replies that the record supported the superior court's finding.

The court's conclusion was based primarily on John's behavior throughout the proceedings.  The court noted that John had a strong track record of supporting Nancy's relationship with Nina, and it stated that "[a]t almost every turn, [John] has taken the extra step to afford [Nancy] opportunities to visit[] with Nina that she might not otherwise have enjoyed."  The record supports this finding.  While John allowed Nancy visitation time with Nina in addition to court-ordered visitation, Nancy never

---

[4]  *Id.* (quoting *Misyura*, 242 P.3d at 1039) (internal quotation marks omitted).

[5]  *Id.* (quoting *Misyura*, 242 P.3d at 1039).

[6]  *Misyura*, 242 P.3d at 1039 (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)) (alteration omitted).

[7]  *Id.* (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

offered John extra time with Nina — and she even shortened John's court-ordered visitation. There also was evidence that John was more likely to facilitate open communication between the parties regarding Nina. Between July 2010 and January 2012, John sent Nancy 18 update emails regarding Nina's progress, but only received four update emails from Nancy.

The superior court contrasted John's actions with Nancy's; it noted that while there had been no "overt efforts" to exclude John, Nancy had "consistently, albeit subtly[,] demonstrated a posture that does not include [John] or his family in [Nina]'s life." The court cited the questionnaires both parties filled out as part of the custody investigation as an example of this. In response to the question, "Who else is important in each child's life?" John identified Nancy; but Nancy only named members of her own family and did not mention John or his family.

Nancy correctly points out that the custody investigator testified that it is common for parents to interpret that question as asking about people other than the parents themselves: "I actually have that happen a lot. And the question probably needs to be reworded so that I specifically say someone other than Mom and Dad, who's important in the child's life." The custody investigator further testified that it was clear from her discussions with Nancy that Nancy "recognizes that her daughter loves her dad, has a good relationship with him[,] and that he needs to be part of her life." With respect to this finding and others, Nancy argues that the superior court erred in disregarding the custody investigator's testimony and recommendations and in failing to make findings explaining why it rejected those recommendations. But a trial court is not obligated to adopt a custody investigator's recommendations or opinion,[8] nor must it make specific

---

[8]     *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1159 (Alaska 2008) (citing *Ebertz*, 113 P.3d at 647).

findings regarding those recommendations as long as it considers the appropriate statutory factors when making a custody determination.[9] We have identified the "critical question" as "not whether the superior court erred in rejecting the custody investigator's proposed decision, but whether the evidence as a whole supports the court's decision."[10]

In this case, there is significant evidence in the record supporting the superior court's conclusion. John testified that even before Nina's birth he was concerned Nancy would not allow him to be involved in his daughter's life. John testified that Nancy would not permit him to see Nina from the time that Nancy moved out of his house in late June 2009 (a month after Nina's birth) until the court ordered that John receive visitation about a month later. He further testified that once supervised visitation had been ordered Nancy would interfere with his visitation time by demanding that he return Nina to her if the baby needed to be fed or changed, or if she became fussy and needed to be soothed.

There was also evidence that Nancy was somewhat unsupportive of the relationship between Nina and John's family in California — particularly with John's mother, Lisa. Lisa, who lives about an hour from Nancy, testified that she had requested visitation time with Nina six times, and that Nancy had refused to permit visitation except on one occasion, for three hours. Lisa also testified that Nancy did not make her feel welcome to visit her home to see Nina and that Nancy never spoke to her during exchanges.

Nancy testified that Lisa was hostile to her and refused to tell Nancy where she was taking Nina. She also testified that her "door is always opened" to John's extended family, though she admitted that she had never contacted any of his family

---

[9]     *Chase v. Chase*, 109 P.3d 942, 946 (Alaska 2005).

[10]    *Ebertz*, 113 P.3d at 647-48.

members with an opportunity to spend time with Nina. Perhaps most revealing of Nancy's attitude toward facilitating a relationship between Nina and John's extended family, though, was her testimony that it would be "impossible" to give members of John's family their own personal time with Nina during Nancy's custodial time:

> I think right now given both of our limited time with [Nina] with the three-months-on/three-months-off that it is impossible for [John's] extended family to have their own personal time because that would require a lot of time taken away from me because I'm out here with both extended families. And I'm already splitting my time with Nina six months out of [the] year plus . . . school. And for extended family to spend time with her while she's with me would require us all to be together.

We have explained that the close and continuing relationship factor takes on "increased significance" when the parties reside in different cities, and thus it is reasonable for the court to place "enhanced importance" on this factor in a custody determination.[11] There was ample support for the court's conclusion that this factor favored John: The evidence indicated that John was more willing to facilitate visitation between Nina and Nancy and that he was more likely to foster open communication. The court's finding is not clearly erroneous.

**B. The Superior Court Did Not Err In Finding That The Stability Factor Favored John.**

The superior court found that the stability factor "slightly favor[ed]" John. It explained:

---

[11] *Blanton v. Yourkowski*, 180 P.3d 948, 951 (Alaska 2008) ("It is essential to have a custodial parent willing to foster an open relationship with the other parent when a great distance separates the children from the non-custodial parent, and it is reasonable for the superior court to place enhanced importance on this factor when making its decision.") (quoting *Silvan v. Alcina*, 105 P.3d 117, 121 (Alaska 2005)).

[John] lives in a house in a quiet residential neighborhood. [Nancy] lives in a an apartment in a busy urban area. Neither is necessarily better-suited to meet [Nina]'s needs. The choice between these two neighborhoods is more a matter of personal preference than of [Nina]'s needs. That said, [John]'s home is better-suited for long-term stability as he owns his home and has lived and worked in the area for a long period of time. In addition, [Nancy] has some unknown variables in her life regarding her future college and work career. Considering those factors, [John] is in a better situation to provide a more certain forecast of educational options for [Nina]. This factor slightly favors the father.

Nancy argues that the superior court determined that Nancy's status as a graduate student and a renter evinced a lack of stability. She contends that favoring a home owner over a renter and penalizing a parent for attending graduate school is error.[12] John replies that the superior court did not determine that the stability factor favored him merely because he owned his own home; rather, the court considered a variety of factors indicating that John would be able to provide long-term stability — including John's long residence in the community and his tenured position at the university. He contends that the court appropriately contrasted these indicators of stability with the unknown variables in Nancy's life, including where she would live, work, and attend graduate school over the next several years.

Nancy primarily relies upon *Veselsky v. Veselsky*,[13] which concerned a mother who desired to move out of state to attend graduate school and was nonetheless awarded primary custody of the parties' children. But Nancy's reliance on *Veselsky* is

---

[12] Nancy also frames her argument as a challenge to the superior court's factual findings, contending that its finding under subsection .150(c)(5) was clearly erroneous. But her brief only discusses the alleged error in the court's legal reasoning, and she does not identify any evidence the superior court failed to consider.

[13] 113 P.3d 629, 631 (Alaska 2005).

misplaced. The *Veselsky* court recognized that graduate school and the desire to be closer to extended family are legitimate reasons for a move,[14] but the legitimacy of Nancy's motivation to move to California is not disputed. The superior court addressed this issue in an earlier order, when it recognized that Nancy had legitimate motives for her move to California, and that the move was a "non-factor" in determining custody.

We have recognized that stability and continuity "can encompass a multitude of factors, including, but not limited to, the relationship with the custodial parent, the home provided by the custodial parent, the children's school, the community of friends and family, the cultural community, the children's relationship with the non-custodial parent[,] and stability of place."[15] "It is the trial court's task to examine all of these factors and determine, in each case, which predominate."[16]

Because the continuity factor includes both emotional stability and geographical stability,[17] courts must consider both geographical and emotional continuity.[18] And as Justice Rabinowitz cautioned in *Craig v. McBride*,[19] "[a]though the

---

[14]    *Id.* at 633 (citing *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989); *Vachon v. Pugliese*, 931 P.2d 371, 379 (Alaska 1996)); *see also Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010) ("In cases involving a parent's relocation out of state, as long as the relocating parent's reasons for moving are legitimate, the trial court must examine the best interests of the child.") (citing *Eniero v. Brekke*, 192 P.3d 147, 150 (Alaska 2008); *Barrett v. Alguire*, 35 P.3d 1, 7 (Alaska 2001)).

[15]    *Williams*, 243 P.3d at 1006 (quoting *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 534 (Alaska 2004)) (alterations omitted).

[16]    *Id.* (quoting *Barrett*, 35 P.3d at 9) (internal quotation marks omitted).

[17]    *Blanton*, 180 P.3d at 954 (citing *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)).

[18]    *Moeller-Prokosch*, 99 P.3d at 535 (holding that failure to consider
(continued...)

stability of the home environment is one of the factors that must be considered in making a custody decision, the fact that the physical location of a child's home changes may have little or no bearing on the stability of the home."[20] Justice Rabinowitz also noted that "[s]tability is often a function of parental attitude and not of geography . . . . [T]he fact that a parent remains rooted in one community provides no guarantee that his or her child will have a stable, loving home."[21] Moreover, in *Evans v. Evans*,[22] we held that the trial court properly "broadened its consideration" of the stability factor "to encompass the children's more general needs for stability in their overall living environment . . . not just in relation to each parent, but in relation to the totality of the circumstances they were likely to encounter in their respective parents' homes."[23]

But we have also held that a trial court did not err in concluding that the stability factor favored the father where the father had resided in the same community for a long period of time and his living arrangements were "settled" and the mother's future living situation was unclear in light of a potential move.[24] And in *Craig v.*

---

[18]   (...continued)
emotional stability was abuse of discretion); *Blanton*, 180 P.3d at 954 ("[A] court considering the child's need for continuity and stability in this context must examine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability.") (quoting *Meier*, 34 P.3d at 1279).

[19]   639 P.2d 303 (Alaska 1982).

[20]   *Id*. at 308 (Rabinowitz, C.J., concurring).

[21]   *Id*.

[22]   869 P.2d 478 (Alaska 1994).

[23]   *Id*. at 482.

[24]   *Blanton*, 180 P.3d at 954-55.

*McBride*, we recognized that "the fact that the mother had only recently attempted to create a stable home environment was entitled to consideration."[25]  In this case, we do not interpret the superior court's remarks to suggest that it gave home ownership an overriding preference over home rental.  The court explained that the choice between Nancy's home and John's home was "a matter of personal preference" and noted that Nancy's future plans with respect to her education and career were still undetermined. The superior court's finding on the stability factor is supported by the record.

### C.    The Superior Court Did Not Err In Considering The Birth Of Nancy's Second Child.

At trial, John argued that the birth of Nancy's second child would interfere with her ability to care for Nina.  The superior court noted that "[a]lthough a new and additional child certainly introduces a new challenge into [Nancy]'s life, whether that new baby will have a significant impact either positive or negative is not measurable at this time." Accordingly, the court simply noted that Nancy's "flexibility to meet [Nina]'s need is slightly more limited" than John's due to the newborn, second child.  Nancy contends that this finding is clearly erroneous; she notes that no evidence was offered that the addition of a sibling would negatively impact Nancy's ability to care for Nina. She also argues that, to the extent that this factor weighed against her in the custody determination, it was legal error.  Nancy does not cite any case law in support of her argument.

A court should not determine custody based on the number of children a party is caring for; the determination should be based on case-specific evidence of each

---

[25]    639 P.2d at 305.

parent's capability to care for the child or children in question.[26] But we do not read the superior court's comment to mean that it gave this factor improper significance; it was careful to state that the impact of Nancy's new baby "is not measurable at this time." We interpret the court's comments to be largely responsive to — and dismissive of — John's argument at trial that Nancy's newborn would negatively impact Nina. We therefore conclude that the superior court did not err.

## D.     Other Issues

### 1.     The custody schedule

The superior court ordered that Nina spend gradually increasing time in John's custody until 2014, when an approximate nine-month/three-month division would begin when Nina began to attend kindergarten. Nancy argues that the superior court erred by failing to explain how this custody schedule was in the best interests of the child. She correctly points out that the court's order regarding the changes in the custody schedule are at odds with the custody investigator's recommendations. The custody investigator recommended continuing the alternating three-month periods of custody until 2014, and she testified that gradually increasing John's custodial time with Nina over a period of several years was potentially more disruptive to Nina.

As noted above, a trial court is not obligated to follow the recommendations of a custody investigator. Moreover, here the custody investigator acknowledged that gradual change often worked for children and sometimes made more sense than an abrupt change. John testified that he thought such a schedule would be in the best interests of his daughter, and the court may have chosen to credit such testimony over

---

[26]     *Id.* at 953 ("The necessary inquiry requires an examination of 'case-specific evidence' of each parent's capability to care for the child.") (quoting *West v. West*, 21 P.3d 838, 843 (Alaska 2001)).

the custody investigator's. The superior court did not abuse its discretion when it ordered this gradual change in the custody schedule.

### 2. John's travel

Nancy contends that the superior court erred by failing to address John's travel schedule — which she characterizes as "frequent[]" and "extensive." Specifically, she argues that the court ought to have ordered that Nina stay with Nancy while John traveled.

But Nancy mischaracterizes John's travel obligations. John testified at trial that if he had primary custody of Nina, he would expect to travel to two or three conferences a year and that those conferences typically last three days. It would not have been reasonable for the court to order that Nancy take custody of Nina during these trips, especially considering the amount of travel and expense involved. The superior court did not err by failing to address John's travel schedule in its order.

### 3. Allocation of visitation expenses

Nancy argues that the court erred in allocating the bulk of travel costs to Nancy because her income is significantly lower than John's. John responds that the allocation of visitation expenses is appropriate because he has to pay for eight trips per year (adult and child tickets), while Nancy is only responsible for the cost of two to four trips per year (adult ticket only).

We remand this issue for clarification because the superior court's order is ambiguous with respect to travel costs. The section of the order concerning travel costs provided that Nancy was responsible for the first $500 of travel costs, John was responsible for the second $500 of travel costs, and Nancy was responsible for any costs exceeding $1,000. But in the section of the order dealing with physical custody, the court adopted the schedule as proposed by John in two trial exhibits. While one of the exhibits is simply a schedule, the other exhibit resembles a proposed order in that it

addresses topics such as the allocation of travel costs. The exhibit provides that John is responsible for the bulk of travel costs. It is unclear whether the court intended to incorporate in its order the allocation of travel costs proposed in the exhibit.

John seems to read the decree to incorporate an allocation that is favorable to Nancy, and Nancy seems to agree with this reading. The superior court may wish to incorporate this reading on remand.

### 4.    Federal tax exemption

Nancy contends the superior court erred in awarding John the entitlement to claim Nina as a dependent for federal tax purposes. She argues that the trial court was required to make specific findings explaining why this arrangement was "just and proper" and that its failure to do so is reversible error.

Alaska Civil Rule 90.3(k) provides that, consistent with AS 25.24.152 and federal law, the trial court may allocate the federal tax exemption for a child between the parties "as is just and proper and in the child's best interests." Alaska Statute 25.24.152 places limitations on the circumstances under which the court may grant a noncustodial parent the right to claim a child as a dependent under federal income tax laws, but does not otherwise restrict the court's discretion.[27]

---

[27]    AS 25.24.152 provides, in relevant part:

(a) In an action for divorce, dissolution, or to declare a marriage void, the court may not unconditionally grant to a noncustodial parent the right to claim a child as a dependent under federal income tax laws . . . .

(b) In this section, "noncustodial parent" means the parent who has actual physical custody of the child for less time than the other parent.

The court ordered that the parties share physical custody until John becomes the primary custodial parent in 2014. But John will actually exercise the majority of this physical custody as Nina approaches a school-year schedule. Moreover, John may be paying some amount of child support until he has primary custody of Nina due to the disparity in the parties' incomes. We conclude that it was within the court's discretion to award John the federal tax exemption. Under these circumstances, further findings on this issue were unnecessary.

V.   **CONCLUSION**

We REMAND for the superior court to clarify its order with respect to the allocation of visitation expenses. We AFFIRM the superior court's order in all other respects.