NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

|  |  |  |
|---|---|---|
| YANA C., | ) | |
| | ) | Supreme Court No. S-18404 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-17-02544 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| ANDREW C., | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 1984 – August 16, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellant. John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

Following an evidentiary hearing on a motion to modify custody, the superior court determined that divorced parents should continue equally shared physical custody and joint legal custody, with an exception for mental health treatment, which was at the mother's sole direction. The court's decision rested on findings that the father's actions had traumatized the children and "put [them] into a loyalty bind," that

---

\* Entered under Alaska Appellate Rule 214.

the father had interfered with the children's counseling, but that both parents were ultimately at fault for the children's situation because neither was significantly more willing to facilitate a relationship between the children and the other parent.

The mother raises several arguments on appeal, one of which we find determinative. We conclude that it was an abuse of discretion to exclude the mother's hearing exhibits without properly considering their relevance and admissibility; that consideration of the excluded evidence could affect the court's findings on the relevant best interests factors; and that the custody award must therefore be vacated and reconsidered on remand.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Divorce and amicable co-parenting

Andrew and Yana C.[1] married in 2013 and have two young daughters. They divorced in 2018 and were awarded joint legal custody and 50/50 physical custody of the children. Yana had a much larger income than Andrew at the time,[2] so the court ordered her to pay child support.

The parties' practice departed from the custody and child support orders. Yana testified that they agreed to waive her child support obligation but that she paid for Andrew's auto insurance and cell phone bills as well as all the children's needs. Although the parties initially shared physical custody on a week-on/week-off basis, they appear to agree that Yana's time with the girls increased significantly as Andrew

---

[1]    We use initials to protect the parties' privacy.

[2]    Andrew was unemployed but owned a coffee business, which grew significantly after the divorce. In 2019 the coffee business was doing well and Andrew had a new job in the oil and gas industry, though by the time of the custody proceeding the coffee business was struggling and he was working fewer hours.

became busier with his coffee business and new job. According to Andrew, he also began paying more of the girls' expenses.

### 2. Breakdown in communication between the parties

The parties' communications about their children were mostly amicable for several years after the divorce, though there were occasional disagreements. The tension between the parties came to a head in June 2021 in a dispute over how the children would spend Father's Day. At around the same time Yana began to worry about her accruing child support debt after hearing about a friend of a friend whose ex-spouse collected overdue child support after years of agreeing not to. She decided she and Andrew should formally modify the child support order to match their informal agreement. However, she testified, Andrew "bec[ame] very angry" when she raised the idea with him, and he announced that he would begin exercising his 50% custody. Yana filed a motion to enforce or modify the custody order in July 2021, asking for primary physical custody.[3]

### 3. Child abuse allegations and protective order proceeding

In late July one of the girls told Andrew that Yana's boyfriend Zach would sometimes lick her face and not stop when she asked him to. Andrew called the state troopers and texted Yana about the disclosure. Yana responded that "the girls have always liked to wrestle around with Zach" and he would "pretend[] to bite them," but that "[b]ecause [she] knew [Andrew] would try anything . . . to attack [her] family," Zach had stopped this pretend fighting with the girls "a long time ago." The troopers investigated Andrew's complaint but closed the file after the "investigation did not uncover any criminal acts."

---

[3] Yana argued first that the terms of the existing custody order required her to have primary physical custody because Andrew had moved 50 miles away. Her alternative argument was for a modification of custody.

A day later Andrew filed a petition for an emergency domestic violence protective order on behalf of his daughters against Zach, alleging that Zach had "put[] his mouth [and] tongue" on one of the girls and citing the troopers' case number without noting that the troopers had already investigated and found no crime. The court granted a 20-day ex parte order.

Later that day, troopers went to Yana and Zach's home to serve the temporary restraining order and remove the children. As a result of the restraining order Zach had to move out and Yana could have only supervised visitation with the girls or speak to them by phone with Andrew participating. Immediately before the scheduled hearing on Andrew's petition for a long-term protective order, however, Andrew dropped his request. The girls were returned to Yana's care. In September they began therapy.

### B. Evidentiary Hearing And Post-Hearing Events

In November the court held an evidentiary hearing on Yana's motion to enforce or modify the custody order. Four witnesses testified: Zach, the girls' therapist, Yana, and Andrew. At the end of the hearing, the judge provisionally admitted Yana's exhibits pending written objections. It invited written closing arguments and took the matter under advisement. Two days after the trial, Andrew filed objections to Yana's trial exhibits. She filed a response, explaining why her exhibits were relevant and admissible.

A few weeks later Andrew withdrew his consent to the girls' therapy, contending that the therapist was biased against him. When Yana moved for sole legal custody for the purpose of making decisions about the children's mental health, Andrew immediately reinstated his consent, and a few days later he opposed Yana's legal custody motion, arguing that it was moot. But the court found that giving Yana sole legal custody for purposes of mental health decisions was the only way to ensure that the girls went to therapy.

In March 2022 Yana moved to compel Andrew to take the children to counseling and to restrain him from coming to her home uninvited. She alleged that Andrew continued to involve the children in their conflict and that the children's "psychological health [was] continuing to deteriorate." She claimed that he had taken the girls to therapy only twice in the preceding three months. Andrew denied the allegations but did not oppose Yana's requested relief.

### C.     The Court's Custody Modification Order

The superior court issued its custody modification order in April. The court noted the parties' initial years of amicable co-parenting while Yana exercised de facto primary custody. The court found that Andrew began to exercise 50/50 custody after Yana moved to modify custody to conform to their preexisting practice. The court made note of Andrew's police report, his petition for a domestic violence restraining order, his failure in that petition to inform the court that the police had already investigated and found no crime, and his withdrawal of the request for a long-term protective order. The court found that it was after this that the "parties' communication . . . deteriorated considerably." The court acknowledged that Andrew had interfered with the children's counseling a number of times, prompting the court's grant of sole legal custody to Yana for the purpose of making mental health decisions.

The court found that Andrew's decision to begin exercising his full allowable custody time and the "substantial litigation" that followed "[c]learly" constituted the change in circumstances necessary to justify a motion to modify custody. The court next analyzed the best interests factors, specifically considering the children's needs, each parent's ability and desire to meet those needs, the bond between each parent and the children, stability, and each parent's willingness to facilitate a

relationship between the children and the other parent.[4] The court cited the therapist's testimony that the children had "increased emotional and mental health needs" and attributed the children's "loyalty bind" primarily to Andrew, pointing to how he delayed taking the children to therapy and then "revoked and reinstated his consent within the same week." The court expressed "grave concerns about [Andrew's] willingness and ability to meet the children's needs" and instructed him not to speak to the children about Yana or the case.

The court also found that "neither parent [was] significantly more willing to facilitate a relationship between the minor children and the other party." It criticized Yana's recording of her conversations with Andrew and found that both parties "overreacted" and "assumed the worst" about the other. Ultimately, the court found it was in the children's best interest to maintain a 50/50 physical custody schedule. As for legal custody, the court expressed concern that "awarding either party sole legal custody will allow that parent to exert complete control over the situation, to the children's detriment." But the court reaffirmed its earlier award to Yana of sole decision-making authority for the children's mental health decisions, observing that this was "the only way that the court is confident that the children will remain in mental health counseling."

Yana appeals, arguing that the superior court erred in its awards of shared physical and legal custody and that it violated due process in two ways: by excluding many of her hearing exhibits and by limiting the evidentiary hearing to five hours.

## III. STANDARD OF REVIEW

"A trial court's determination of custody will be set aside only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that

---

[4] *See* AS 25.24.150(c) (listing factors court must consider in custody proceeding when "determining the best interests of the child").

the trial court abused its discretion."[5]  We review both the superior court's evidentiary rulings and its control of its trial calendar for abuse of discretion.[6]

## IV.   DISCUSSION

### A.   It Was An Abuse Of Discretion Not To Consider The Admissibility Of Yana's Exhibits On Their Merits.

The superior court provisionally admitted Yana's proffered exhibits at the close of the evidentiary hearing; these included texts between the parties, school records, insurance information, and transcripts of recorded conversations.  The court invited the parties to file written closing arguments and gave Andrew two days to file written objections to the provisionally admitted exhibits.  Andrew filed objections to all but two of Yana's exhibits, making general challenges based on relevance, prejudice, lack of authentication, and waste of time.  Yana responded in writing five days later, explaining why she believed her exhibits were relevant and admissible.  She received an automated confirmation email from the court system, although her response does not appear in the original trial court record.

Yana's exhibits seem to be relevant and admissible.  One exhibit is a 323-page compilation of the parties' text messages,[7] many of which were more legible

---

[5]      *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002) (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[6]      *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008) (citing *Bierria v. Dickinson Mfg. Co.*, 36 P.3d 654, 657 (Alaska 2001)) (noting abuse of discretion standard of review for evidentiary rulings); *Judd v. Burns*, 397 P.3d 331, 338-39 (Alaska 2017) (noting abuse of discretion standard for calendaring decisions such as length of custody hearing).

[7]      The court described it as "not an unfamiliar text dump . . . probably obtained . . . directly from a phone or from a telecommunications company . . . where every text is in there.  And it's dated and time stamped and says whether it's sent or received and who it's sent from, and et cetera, et cetera."

copies of Andrew's own admitted exhibits.[8]  Other exhibits contain the girls' school records.  Yana testified at the hearing that the records show poor school performance in some areas, relevant to her argument that Andrew was not meeting the girls' educational needs.  Andrew's only objection to them was that he (mistakenly) "d[id] not recall [the] school records being referred to in the trial."  Another exhibit was insurance information that may no longer be relevant, as the court has not ordered Yana to pay back child support.  Finally, six exhibits are transcripts of conversations with the children which also appear to be relevant to the best interests determination, specifically Yana's allegations about Andrew's behavior toward her and the children.

In a ruling almost five months after the hearing, the court observed that it had provisionally admitted these exhibits "pending written closing arguments regarding why they should be admitted."[9]  The court stated, however, that Yana "did not address these in her closing arguments or in other filings," and "[t]herefore, the court will not admit these exhibits."  As noted above, the court was factually mistaken; Yana's written response to Andrew's objections addressed each exhibit, identified the point in the testimony where it was discussed, and explained how it supported Yana's arguments.  The record indicates that although the court never saw Yana's explanation of her exhibits, it was timely and properly filed.

Because the court disregarded Yana's exhibits solely on the basis of a mistaken premise — that she had failed to address them in her post-hearing filings — we remand for a substantive determination of the exhibits' relevance and admissibility.

---

[8]  *See* Alaska R. Evid. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.").

[9]  The hearing transcript does not support the court's apparent implication that it had ordered Yana to affirmatively demonstrate why her exhibits "should be admitted"; the court provisionally admitted them pending Andrew's written objections.

**B.** **Because Consideration Of Yana's Excluded Exhibits May Change The Court's Analysis Of The Best Interests Factors, We Vacate The Custody Award.**

The court awarded the parties equally shared physical custody and (for all issues except mental health treatment) joint legal custody, despite its findings that the statutory best interests factors were either neutral or favored Yana. First, the court credited the therapist's testimony "that the children have increased emotional and mental health needs as a result of the upheaval they have experienced."[10] The court did not explicitly weigh this factor in Yana's favor, but it did appear to attribute the trauma primarily to Andrew's behavior, finding credible the therapist's testimony that one of the children felt "guilty and dysregulated" and believed her mother was "a liar and [a] cheat[]," thoughts children would not have "unless an adult was saying it to them first," and that both children were frustrated with their mother because she did not "tell[] them as much information as" their father did.

After identifying the children's needs, the court said it had "grave concerns about [Andrew's] willingness and ability to meet [those needs]."[11] The court found that Andrew was primarily responsible for the children's "loyalty bind" and had continuously interfered with and delayed the children's therapy; it also cited Andrew's reliance on the police report in his petition for a domestic violence protective order even "after being told [by the police] that there was no crime to be investigated." The court pointedly encouraged Andrew to work with the children's therapist "so that he can better meet their emotional needs" and "instructed [him] to not discuss any portion of this case with the . . . children."

---

[10] *See* AS 25.24.150(c)(1) (requiring court in best interests determination to consider "the physical, emotional, mental, religious, and social needs of the child").

[11] *See* AS 25.24.150(c)(2) (requiring court to consider "the capability and desire of each parent to meet" the child's needs).

Although its analysis seemingly favored Yana up to this point, the court found that the remaining factors favored neither party: both parents had love and affection for the children and the children loved both parents;[12] the children had been living primarily with Yana but had had regular visitation with Andrew for "almost ten months";[13] and "neither parent [was] significantly more willing to facilitate a relationship between the minor children and the other party."[14] The court found that "[b]oth parties have overreacted, assumed the worst about their children's other parent, and made decisions for the children based on their own fears and desires," and as a result "[t]he situation that the children have been placed in is regrettable and is the fault of both parents." The court encouraged the parents to "work together to achieve their children's best interests and work to reduce the amount of conflict that the children are exposed to."

Yana's rejected exhibits include texts and recorded conversations that appear to support her arguments in the best interests analysis that Andrew worked to alienate the children from her. Because the court's shared custody award appears to rest primarily on its findings that the parents were equally unwilling to facilitate a relationship with the other parent and equally at fault for their children's trauma — all other factors being neutral or favoring Yana —we are unable to say that this additional

---

[12] *See* AS 25.24.150(c)(4) (requiring court to consider "the love and affection existing between the child and each parent").

[13] *See* AS 25.24.150(c)(5) (requiring court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[14] *See* AS 25.24.150(c)(6) (requiring court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

evidence would not have affected the court's decision. We therefore vacate the custody award.[15]

## V.   CONCLUSION

We VACATE the court's custody order and REMAND for further proceedings consistent with this opinion.

---

[15]   We have considered but reject Yana's arguments that the court's findings were inadequate for appellate review and that the court denied her due process by limiting the modification hearing to five hours. Yana's argument that the court failed to consider some of her alleged changes in circumstances when deciding to hold an evidentiary hearing was mooted when the court agreed that circumstances had changed enough to justify a modification of custody.

We make one more unfortunately necessary point. We recognize that custody disputes are often marked by hostility between parents who have much at stake and understandably high emotions. But we expect lawyers to act professionally regardless of these pressures. Andrew's lawyer too often resorts to demeaning language and sarcasm, which do not advance his positions.